On Application for Rehearing

SEE, Justice.
This Court’s opinion of December 15, 2006, is withdrawn, and the following is substituted therefor.
T.V., the mother of N.V., appeals the trial court’s termination of her parental rights. Because the trial court failed to find by clear and convincing evidence that there was no viable alternative to terminating T.V.’s parental rights, we reverse its judgment and remand the case.

Facts and Procedural History

T.V. began using drugs in the 1980s and became addicted to crack cocaine in the 1990s. She continued to use crack cocaine while she was pregnant with N.V., her second child, who was born on June 2, 1999. While she was pregnant with N.V., T.V. sought assistance from the Department of Human Resources (“DHR”) because, as a result of her drug addiction, she was homeless, was without employment or transportation, and was unable to perform her parental duties. She was also facing criminal misdemeanor charges.
Shortly after N.V.’s birth, DHR filed a dependency petition with regard to N.V. because of concerns about T.V.’s homelessness, drug use, and incarceration pending the criminal charges. N.V. was adjudicated dependent, and an agreement was reached among T.V., DHR, and B.S., an acquaintance of T.V.’s,[1] that B.S. would *3 have physical custody of N.V. and that T.V. would be allowed visitation as agreed between B.S. and T.V. There was a one-year period following the adjudication of dependency during which DHR attempted to reunite T.V. and N.V. DHR prepared an individual service plan (“ISP”) addressing T.V.’s housing and drug problems, but it could not prepare a home study because T.V. was homeless. T.V. failed to comply with drug treatment recommended by the ISP; instead, she agreed to the permanent placement of N.V. with B.S. The next year, the trial court with jurisdiction over the dependency petition vested permanent legal and physical custody of N.V. in B.S., with T.V.’s consent, although the trial court retained jurisdiction to reopen the custody award. The award of permanent custody marked the end of DHR’s involvement in the case; at that time T.V. was still addicted to crack cocaine.
Both the court’s order and the record in the termination-of-parental-rights case establish that T.V. has now met the goals DHR originally set for her. She is no longer homeless, and she has dealt with her drug problem. She reconciled with and married D.R.V., the father of her first child. Through involvement with their church, T.V. and D.R.V. have quit using illegal drugs. T.V. testified that she has been drug-free since July 20, 2002. T.V. ministers to people with substance-abuse problems. She has maintained employment since July 20, 2002, with short interruptions. She has voluntarily contributed small amounts to N.V.’s support; these amounts total $270 since 2004.
T.V. testified that she first attempted to reestablish visitation with N.V. in 2002. She asserts that she understood that “B.S. was willing to help her in raising her son during the period of her drug addiction but would be willing to help facilitate the reunification of mother and child should T.V. overcome her drug addiction.” T.V.’s brief at 8-9. However, according to T.V., B.S. and her husband, C.S., discouraged the reunification, not returning T.V.’s telephone calls or responding to notes T.V. left at B.S.’s house. On “numerous occasions,” T.V. claims, she went to B.S.’s residence to see N.V., but B.S. would leave the residence with him and not allow T.V. to visit him. C.S. testified, to the contrary, that T.V. visited N.V. only four to six times from 1999 to 2000, and that, from 2000 until the petition was filed in March 2004, she did not visit at all.
Believing that B.S. was resisting her efforts to reunite with N.V., T.V. moved the trial court for visitation rights; the trial court awarded her one hour of supervised visitation each week. In March 2004, B.S. filed in the trial court the current petition to terminate T.V.’s parental rights. T.V. moved the court for additional visitation, but it terminated her parental rights before ruling on her motion.
The Court of Civil Appeals affirmed the trial court’s judgment, without an opinion. T.V. v. B.S. (No. 2040406, Oct. 7, 2005),- *4 So.2d - (Ala.Civ.App.2005) (table). T.V. petitioned for, and this Court granted, certiorari review.

Issue

The issue before this Court is whether the trial court exceeded its discretion when it found that B.S. had presented clear and convincing evidence indicating that terminating T.V.’s parental rights was in N.V.’s best interest. T.V. argues that the trial court failed to consider her improved conduct and circumstances in making its decision to terminate her parental rights, that DHR failed in its duty to make efforts toward reuniting N.V. and T.V., and that B.S. had prevented contact between T.V. and N.V. in order to perpetuate the child’s dependency as adjudicated.

Standard of Review

In order to terminate parental rights, the trial court must find by clear and convincing evidence that the child is dependent and that an alternative less drastic than termination of parental rights is not available. Ala.Code 1975, §§ 12—15— 65(e), 26-18-1 to 26-18-10; Ex parte Beasley, 564 So.2d 950, 952 (Ala.1990). “The trial court’s decision in proceedings to terminate parental rights is presumed to be correct when the decision is based upon ore tenus evidence, and such a decision based upon such evidence will be set aside only if the record shows it to be plainly and palpably wrong.” Ex parte State Dep’t of Human Res., 624 So.2d 589, 593 (Ala.1993). “This presumption is based on the trial court’s unique position to directly observe the witnesses and to assess their demeanor and credibility.” Ex parte Fann, 810 So.2d 631, 633 (Ala.2001). However, the party seeking to terminate parental rights has the burden to present clear and convincing evidence showing that the parent is not capable or is unwilling to discharge his or her parental responsibilities and that there are no viable alternatives to terminating parental rights. Ex parte Ogle, 516 So.2d 243, 247 (Ala.1987); see also K.W. v. J.G., 856 So.2d 859, 874 (Ala.Civ.App.2003) (holding that the party seeking to terminate the parental rights of another bears the burden of proving that termination of those rights is the appropriate remedy).

Analysis

When deciding whether to terminate parental rights, “the primary focus of a court ... is to protect the welfare of children and at the same time to protect the rights of their parents.” Ex parte Beasley, 564 So.2d 950, 952 (Ala.1990). Thus, “a court should terminate parental rights only in the most egregious of circumstances.” Id. Beasley set forth a two-pronged test that must be applied in terminating an individual’s parental rights. First, unless the petitioner is a parént of the child, the court must make a “finding of dependency.” 564 So.2d at 954. For a finding of dependency, the court must consider whether there are grounds for terminating the parental rights, including but not limited to the grounds specified in § 26-18-7.[2] 564 So.2d at 954. After mak *5 ing a finding of dependency, the court must ensure that “all viable alternatives to a termination of parental rights have been considered.” 564 So.2d at 954.
“Once the court has complied with this two-prong test — that is, once it has determined that the petitioner has met the statutory burden of proof and that, having considered and rejected other alternatives, a termination of parental rights is in the best interest of the child — it can order the termination of parental rights.”
564 So.2d at 954-55.
The Court of Civil Appeals has “consistently held that the existence of evidence of current conditions or conduct relating to a parent’s inability or unwillingness to care for his or her children is implicit in the requirement that termination of parental rights be based on clear and convincing evidence.” D.O. v. Calhoun County Dep’t of Human Res., 859 So.2d 439, 444 (Ala.Civ.App.2003); see also P.H. v. Madison County Dep’t of Human Res., 937 So.2d 525, 531 (Ala.Civ.App.2006) (quoting D.O.).
T.V. argues on appeal that the trial court failed to give proper consideration to T.V.’s current conditions and conduct when it applied the two-pronged test and thus that the court’s decision was plainly and palpably wrong. According to T.V., the factors that contributed to N.V.’s dependency no longer exist: T.V. provides some monetary support for N.V.; she exercises visitation; she married the father of her first child; she has proper housing, employment, and transportation; she is sober and drug-free; she regularly attends church; and she counsels others combating drug addiction.
A. Dependency
The trial court made a finding of dependency as to N.V., stating that there was
“clear and convincing evidence, competent, material and relevant in nature that [T.V.] is unable to discharge her responsibilities to and for [N.V.] and [her conduct and condition is] such as to render her unable to properly care for *6 the child and that such conduct or condition is unlikely to change in the foreseeable future.”
The court recognized that many of the concerns that had led to the finding of dependency immediately after N.V.’s birth in 1999 no longer exist; however, the court concluded that T.V. had periodically abandoned N.V. and that “very little effort had been made by the mother to visit her child.... [T.V.] proffered the excuse that [B.S. and her family] did not make her feel welcome but the Court does not find that to be a reasonable excuse” because T.V. had other means, including the courts, to enforce visitation. Ultimately, the trial court again found that N.V. is a dependent child and that T.V. is unable to fulfill her parental obligations “because so much time has gone by that the child does not know [his mother].”
The trial court considered each factor listed in § 26-18-7, Ala.Code 1975. The record supports the court’s finding that T.V. has consistently failed to support her child financially, and, although there was testimony to the contrary, there is sufficient evidence to support the finding that T.V. rarely contacted and visited her child before 2004.[3] Further, despite “her regular supervised visitation beginning in 2004,” the trial court found that because of her long absence and sporadic visitation, T.V. currently cannot discharge her parental responsibilities. B.S. has raised N.V. since his birth; the child considers himself a member of B.S.’s family and does not understand who T.V. is; and Pam Locke, the social worker supervising the court-ordered visitation, testified as to her concern about the impact on N.V. of his discovering that B.S. is not his natural mother. Based on these findings, we cannot say that the trial court plainly and palpa *7 bly erred by determining that N.V. was dependent because T.V. could not perform her parental responsibilities.
B. Other Viable Alternatives
A finding of dependency alone will not allow a trial court to terminate a parent’s rights to his or her child; the trial court also must find by clear and convincing evidence that there are no viable alternatives to the termination of parental rights.
T.V. argues that the trial court’s finding that there was no viable alternative to the termination of her parental rights was incorrect because DHR had failed to work to facilitate the reunification of T.V. and N.V. The Court of Civil Appeals has consistently noted that “ ‘[pjursuant to the terms of a consent judgment in federal litigation, DHR has an affirmative duty to facilitate, family reunification whenever that goal is possible.’ ” D.O., 859 So.2d at 444 (quoting V.M. v. State Dep’t of Human Res., 710 So.2d 915, 921 (Ala.Civ.App.1998), citing in turn R.C. v. Nachman, 969 F.Supp. 682 (M.D.Ala.1997)).[4] The trial court concluded that DHR’s past efforts to reunite TV. and N.V. were reasonable and had failed. It is, however, not clear from our caselaw whether DHR had a duty to perform a home study when B.S. petitioned the trial court to terminate TV’s parental rights. The cases cited by TV. generally do not involve petitions by individuals, but instead involve petitions by DHR itself to terminate the rights of a parent or parents.[5]
It is also not clear from the record whether DHR intentionally ended its involvement with TV’s case or did so out of inadvertence. Neither party presented evidence explaining why DHR did not continue to supervise its placement of N.V. with B.S., even though the trial court, at the time the custody issue was initially decided, had explained to all parties that the custody decision was subject to being reopened by T.V.- There is no indication that DHR has made any recent efforts to facilitate reunification; there has not been any examination of TV’s current ability or willingness to care for N.V. since B.S. received permanent legal and physical custody in 2000. The trial court did not order DHR to perform a home study nor did it hear any testimony by DHR social workers regarding TV’s current circumstances. Thus, it is not clear from the record what possible viable alternatives might have been found.
Finally, the evidence at trial demom strated that DHR had placed N.V. with B.S. under.the mistaken belief that it was making a relative placement. However, there is no evidence in the record indicating that the trial court ever considered a relative placement after learning that B.S. was not related to either T.V. or N.V. See *8 V.M., 710 So.2d at 921 (holding that the trial court had failed to consider all viable alternatives when it had not considered the possibility of placement with other family members).
In deciding that there was no viable alternative to the termination of T.V.’s parental rights, the trial court in this case expressed its concern that N.V. has known B.S. and her family as his only family. The court noted the evidence that was not in the record:
“No expert was called to explain away the possibly devastating consequences to this five-year-old child upon finding out that his family was not really his family and he would have to' go live with strangers who lived in the same town with him but didn’t really try to develop a relationship with him for five years.”
This case' is not about whether N.V. would have to leave B.S. and her family and live with strangers. The only issue in this case is whether there were grounds to terminate T.V.’s parental rights and whether there was a viable alternative to doing so. The trial court lauded the manner in which T.V. had turned her life around:
“While she has remained drug free since [N.V. was three years old], established a home with [the father of her older son] and her older son, has had sporadic employment, and is active in her church, she waited until [N.V.] was four-and-a-half years old to try to establish a relationship with him. The Court is aware that these accomplishments did not occur without a great deal of effort and time, but there has been no explanation why she ignored [N.V.] for so long and failed to forge a relationship with him while she continued to improve her life.”
The only expert testimony was that TV. was making progress in establishing her relationship with N.V., that a bond appeared to be emerging between them, and that a strong relationship could grow if it were nurtured. Further, the child’s guardian ad litem argued that she did not believe it to be in N.V.’s best interests to terminate T.V.’s parental rights. She pointed out that N.V. had, in effect, two families attempting to meet his needs and to give him affection. She also pointed out that an alternative to terminating T.V.’s parental rights was to maintain the status quo, by which she meant that visitation would continue while permanent legal and physical custody would remain in B.S. The record as it currently stands thus does not demonstrate that the trial court examined all the viable alternatives to the termination of T.V.’s parental rights.
Justice Smith’s dissent suggests that we have ignored the trial court’s factual findings regarding T.V.’s past and present inability to care for her child. 971 So.2d at 17-20. In fact, it is these factual findings that form the basis of our holding that N.V. continues to be a dependent child. However, this Court must review not only whether N.V. remains dependent, but also whether the trial court considered and rejected, based on clear and convincing evidence, the possible viable alternatives before terminating T.V.’s parental rights. See Ex parte Ogle, 516 So.2d at 247 (holding that the party attempting to terminate a parent’s parental rights has the burden to prove, by clear and convincing evidence, that there are no viable alternatives); J.D. v. Tuscaloosa County Dep’t of Human Res., 923 So.2d 303, 307 n. 1 (Ala.Civ.App.2005) (“When a nonparent such as DHR seeks to terminate parental rights, it must establish by clear and convincing evidence not only that the children are dependent but also that no viable alternative to termination of the parental rights exists.”); D.O. v. Calhoun County Dep’t of Human Res., 859 So.2d at 443 (“A nonparent who *9 seeks to terminate a parent’s parental rights must prove by clear and convincing evidence that the children are dependent and that there are no viable alternatives to the termination of parental rights.”); A.M. v. Lamar County Dep’t of Human Res., 848 So.2d 258, 259 (Ala.Civ.App.2002) (same). The need to consider all viable alternatives is rooted, in part, in the recognition that the termination of parental rights is a drastic step that once taken cannot be withdrawn and that implicates due process. Thus, the Beasley two-pronged test is designed to protect the welfare of the child while also protecting the rights of parents. Beasley, 564 So.2d at 952. The requirement that clear and convincing evidence support the determination to terminate parental rights is based on the need to protect the due-process rights of the parents. Santosky v. Kramer, 455 U.S. 745, 769, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). The party seeking to terminate a person’s parental rights thus has the burden of producing clear and convincing evidence that there are no viable alternatives to the termination of parental rights. Ex parte Ogle, 516 So.2d at 247; see also K.W. v. J.G., 856 So.2d 859, 874 (Ala.Civ.App.2003) (holding that the party seeking to terminate the parental rights of another bears the burden of proving that termination of those rights is the appropriate remedy).
Further, as noted above, the Court of Civil Appeals has “consistently held that the existence of evidence of current conditions or conduct relating to a parent’s inability or unwillingness to care for his or her children is implicit in the requirement that termination of parental rights is based on clear and convincing evidence.” D.O., 859 So.2d at 444. It is because the termination of parental rights implicates “[t]he fundamental liberty interest of natural parents in the care, custody, and management of their child,” Santosky, 455 U.S. at 753, 102 S.Ct. 1388, that such an exacting level of certainty based on evidence of the parent’s current situation is required. Thus, while we must presume under the ore tenus rule that the trial court’s factual findings are correct, that rule does not relieve this Court of its responsibility to ensure that those facts clearly and convincingly warrant the termination of parental rights.
“ ‘The appellate courts do not sit in judgment of the facts, and [they] review the factfinder’s determination of facts only to the extent of determining whether it is sufficiently supported by the evidence, that question being one of law.’ ” Hinds v. Hinds, 887 So.2d 267, 272-73 n. 2 (Ala.Civ.App.2003) (quoting Curtis White Constr. Co. v. Butts & Billingsley Constr. Co., 473 So.2d 1040, 1041 (Aa.1985)) (emphasis omitted). Justice Smith’s dissent suggests that we are in the case before us “reweigh[ing] the evidence.” 971 So.2d at 20. We are not; we are required, however, to determine whether clear and convincing evidence supports the trial court’s conclusion that there is no viable alternative to the termination of T.V.’s parental rights, and that is the issue we address.
Borrowing from the statutory definition in § 6-ll-20(b), Ala.Code 1975, relating to the award of punitive damages, the Court of Civil Appeals has defined what constitutes “clear and convincing evidence” in proceedings to terminate parental rights. In L.M. v. D.D.F., 840 So.2d 171, 179 (Aa.Civ.App.2002), that court stated that “ ‘[c]lear and convincing evidence’ is ‘[e]vi-dence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion.’ ” We do not believe that the evidence in this case clearly and con *10 vincingly supports the factual finding that there are no viable alternatives to terminating T.V.’s parental rights.[6] The trial court’s order includes a factual finding that T.V. has stopped using drugs, that she has reconciled with her family, that she participates in raising and supporting her other son, and that she regularly attends church. The only reason the trial court offered as justification for its finding that there is no viable alternative to the termination of T.V.’s parental rights was T.V.’s failure to visit N.V. and the child’s corresponding inability to know her as his mother. However, the only evidence in the record regarding the effect of these absences on N.V. was the testimony that N.V. did not understand who T.V. was and the social worker’s testimony that a bond between N.V. and T.V. was emerging. The trial court’s concern that T.V. ultimately wanted to regain custody of N.V. does not, in itself, provide clear and convincing evidence that the current situation in which T.V. is allowed to visit with N.V. is untenable. Both B.S. and C.S. testified that they would eventually have to tell N.V. that he is not their natural son. The child still carries T.V.’s last name, and he uses that name at school. Thus, given that N.V. will one day have to learn that he is not B.S.’s natural son, visitation — which upon all accounts does not harm N.V. and which the guardian ad litem concluded is good for N.V. — would appear to be a viable alternative to the termination of T.V.’s parental rights. Therefore, the conclusion that there are no viable alternatives to terminating T.V.’s parental rights is not supported by clear and convincing evidence.
Because the trial court did not, after full consideration of all the viable alternatives to terminating T.V.’s parental rights, find clear and convincing evidence that none existed, the order terminating her rights must be reversed and the cause remanded to the trial court for a full consideration of viable alternatives to terminating of T.V.’s parental rights. See State Dep’t of Human Res. v. A.J.T., 939 So.2d 46, 47-48 (Ala.Civ.App.2006) (“A termination of parental rights ... should occur only after consideration of all possible viable alternatives to termination, and must be in the child’s best interest.”).

Conclusion

As the Court of Civil Appeals has stated on several occasions:
“ ‘[T]he termination of parental rights is a drastic measure, and we know of no means by which those rights, once terminated, can be reinstated. The evidence in [this] case[] does not rise to the level of being so clear and convincing as to support termination of the parental rights of the mother, such action being the last and most extreme disposition permitted by statute.’ ”
D.O., 859 So.2d at 445 (quoting V.M., 710 So.2d at 921). We reverse the trial court’s judgment terminating T.V.’s parental rights and remand this case to that court for further proceedings consistent with this opinion.
*11 APPLICATION OVERRULED; OPINION OF DECEMBER 15, 2006, WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND REMANDED.
NABERS, C.J., and LYONS, HARWOOD, WOODALL, and PARKER, JJ., concur.
STUART, SMITH, and BOLIN, JJ., dissent.

. It appears that B.S.’s stepbrothers are T.V.’s first cousins. DHR apparently considered this placement a “relative placement” rather than a "foster placement,” although there is no consanguinity between T.V. and B.S. T.V.’s brief at 7. There is no statutory definition of "relative” with respect to placements; § 12-15-71, Ala.Code 1975, simply states that if a *3 child is found to be dependent, the court can place the child in the legal custody of DHR, a private child-care agency, or a "relative or other individual ... found by the court to be qualified to receive and care for the child.” Alabama courts have recognized that the possibility of placing a child with a relative is a viable alternative to terminating parental rights. V.M. v. State Dep’t of Human Res., 710 So.2d 915, 921 (Ala.Civ.App.1998) (holding that the trial court had failed to consider all viable alternatives when it had not considered the possibility of placement with other family members). Whether the placement of N.V. was originally considered a foster placement or a relative placement, the parties now agree that whatever it might then have been considered by DHR, the placement was not a relative placement. In any event, our decision does not rest on whether DHR considered the original placement at that time to be a foster placement or a relative placement.

. While not limiting the elements that can be a part of the trial court’s decision, § 26-18-7 requires the trial court to consider the following:
“(1) That the parents have abandoned the child, provided that in such cases, proof shall not be required of reasonable efforts to prevent removal or reunite the child with the parents.
“(2) Emotional illness, mental illness or mental deficiency of the parent, or excessive use of alcohol or controlled substances, of such duration or nature as to render the parent unable to care for [the] needs of the child.
"(3) That the parent has tortured, abused, cruelly beaten, or otherwise maltreated the child, or attempted to torture, *5 abuse, cruelly beat, or otherwise maltreat the child, or the child is in clear and present danger of being thus tortured, abused, cruelly beaten, or otherwise maltreated as evidenced by such treatment of a sibling.
"(4) Conviction of and imprisonment for a felony.
"(5) Unexplained serious physical injury to the child under such circumstances as would indicate that such injuries resulted from the intentional conduct or willful neglect of the parent.
"(6) That reasonable efforts by the Department of Human Resources or licensed public or private child care agencies leading toward the rehabilitation of the parents have failed.
"(7) That the parent has been convicted by a court of competent jurisdiction of any of the following [crimes].
[[Image here]]
"(8) That parental rights to a sibling of the child have been involuntarily terminated.”
Further, when the child is not in the custody of the parent, § 26-18-7 requires the trial court to consider, among other factors:
“(1) Failure by the parents to provide for the material needs of the child or to pay a reasonable portion of its support, where the parent is able to do so.
“(2) Failure by the parents to maintain regular visits with the child in accordance with a plan devised by the department, or any public or licensed private child care agency, and agreed to by the parent.
“(3) Failure by the parents to maintain consistent contact or communication with the child.
"(4) Lack of effort by the parent to adjust his or her circumstances to meet the needs of the child in accordance with agreements reached, including agreements reached with local departments of human resources or licensed child-placing agencies, in an administrative review or a judicial review.”

. T.V. claims that B.S. and her family prevented her from having contact with N.V. in "an attempt to perpetuate the child's dependency and consequently bolster their case to terminate the mother’s parental rights.” In K.W. v. J.G., 856 So.2d 859, 874 (Ala.Civ.App.2003), in which the Court of Civil Appeals found the evidence offered in support of the trial court’s termination of parental rights insufficient, DHR decided to join the foster parent's petition to terminate K.W.’s parental rights. DHR was concerned about "the child's apparent failure to bond with the mother.” 856 So.2d at 872. The trial court had found that DHR’s role in the case was to facilitate, if possible, reuniting the mother and the child. The foster parents, however, "actively sought to prevent the reunification” by trying to prevent visitation and by petitioning to terminate parental rights and to adopt the child themselves. 856 So.2d at 873. The Court of Civil Appeals concluded that "the evidence supports a conclusion that the foster parents’ conduct in seeking to terminate, rather than support, the relationship, between the child and the mother, has also contributed to the child's confusion and failure to bond with the mother.” 856 So.2d at 873.
In this case, T.V. testified that she understood when she gave B.S. custody of N.V. that B.S. would work with her to eventually reunite mother and child. However, B.S.'s husband testified that he believed that the order entered in 2000 granting B.S. permanent legal and physical custody terminated T.V.’s parental rights. Pam Locke, the social worker supervising the visitation, testified that N.V. said that B.S. would not let him come back to the court-ordered visitation. See L.M. v. D.D.F., 840 So.2d 171, 178-79 (Ala.Civ.App.2002) (reversing termination of father’s parental rights where mother actively prevented him from visiting his children). It was only after T.V. requested more visitation and began sending money to help support N.V. that B.S. brought the petition to terminate the parental rights. Moreover, the trial court did not find that T.V. was not prevented from visiting, but instead concluded that T.V. should have done more to force the visitation.
Nonetheless, we presume that the trial court’s factual findings are correct, especially in the face of conflicting testimony. Ex parte Fann, 810 So.2d 631, 633 (Ala.2001). The court's order stated only that B.S. and her family made T.V. feel unwelcome, not that T.V. was actually prevented from visiting N.V.

. Justice Smith's dissent correctly points out that R.C. involved only a class of children with emotional and/or behavioral disorders who were in DHR custody. 971 So.2d at 19. The Court of Civil Appeals, however, has not limited its understanding of DHR's duty to pursue family reunification to those circumstances. In fact, D.O. itself apparently did not involve a class of such children, and the Court of Civil Appeals’ opinion makes no reference to any of the children's having special needs. See generally D.O., 859 So.2d at 440-443 (laying out the facts of the case).

. We do not hold that DHR had an affirmative duty to intervene in this case. However, the trial court’s finding that there were no viable alternatives to terminating T.V.'s parental rights must be supported by clear and convincing evidence relating to T.V.’s current circumstances and parenting abilities. One possible source of such evidence could have been a home study, had DHR done one-.

. Justice Smith offers that, "[g]iven the evidence, had DHR, at the permanency hearing in December 2000, filed a petition to terminate T.V.'s parental rights and advocated ‘permanent’ custody with B.S., a relative identified by the mother, the agency clearly could have sustained its evidentiary burden for legally severing all ties of the mother.” 971 So.2d at 19. However, we do not have before us a petition to review such a hypothetical December 2000 order; DHR did not petition in December 2000 to sever all ties of the mother. The matter before us is whether there is, at this time, clear and convincing evidence of the absence of any other viable alternative to the termination of T.V.’s parental rights.