SMITH, Justice
(concurring specially).
I concur with the majority opinion in all respects. I write specially to highlight the inexplicably wide legal chasm between the evidence necessary to sever a parent’s rights by a finding of implied consent in an adoption case filed in the probate court and the evidence necessary to sever a parent’s rights in a termination-of-parental-rights proceeding filed in the juvenile court.
This case originated in the juvenile court in a rather typical fashion. The Department of Human Resources (“DHR”) initiated the matter in the juvenile court by filing a dependency petition. DHR initially placed the child with a relative and ultimately placed the child with E.W.H. and S.M.H., friends of the relative and individuals approved by DHR as foster parents. DHR’s efforts at reunification of the family unit were apparently to no avail because of the mother’s continued use of drugs and the father’s failure to pursue any relationship with his child.
As the majority opinion notes, the maternal grandparents each filed a separate appeal. The appellate process in their appeals was not finalized until March 11, 2005, when this Court denied the grandfather’s petition for the writ of certiorari. Only when the child was five years old, and at the point in time when DHR would have presumably filed a petition to terminate parental rights based on the father’s absence and the mother’s continuing drug dependency, did the maternal great-uncle and his wife, W.P. and P.P., come forward to offer themselves as a relative resource.
The foster parents filed an adoption petition in the probate court within days of the finalization of the appellate process of the juvenile court proceeding, asserting that the parents implicitly consented to the child’s adoption by virtue of their abandonment of the child. Not surprisingly, W.P. and P.P. attempted to transfer the adoption proceeding to the juvenile court. The probate court denied their motion to transfer the adoption proceeding to the juvenile court, and the juvenile court postponed its scheduled proceedings pending outcome of the adoption proceeding.
Although W.P. and P.P. testified in the adoption proceeding that they did not come forward earlier “due to pending appeals” and to “preserve family harmony,” they admitted on cross-examination that when the child came into DHR’s care in 2000 at six months of age they had their own family obligations that apparently influenced their decision not to respond to DHR’s efforts to locate a family resource. Specifically, P.P. testified:
“Whenever [the child] first came to Cull-man when she was six months old, at that time it was the year, I believe, of 2000. At that time[,] my husband and I still had two children in college. My daughter had announced that she was going to be getting married, so we were in the middle of children in college and also planning for weddings. And at that point in our life, we had built a house, and we had only been in that house for one year. And also at that time, we felt like we had raised our children. We weren’t ready to take on a six-month-old.”
The rationale advanced by this Court in our recent decision in Ex parte T.V., 971 So.2d 1 (Ala.2007), suggests that DHR must pursue any viable resource rather *1026 than filing a termination-of-parental-rights petition, regardless of the length of time the child has been in foster care. In my dissent in T.V., I observed that had a termination-of-parental-rights proceeding been filed after the 18-month permanency hearing, there was ample evidence to suggest that the mother had, in essence, abandoned her child. But, because no termination proceeding had been filed at that juncture, the mother could rehabilitate herself and later seek to have some place in her child’s life, regardless of the child’s age and despite innumerable years of neglect and abandonment. It is no wonder that the relatives in the instant case, who have belatedly asserted themselves as a viable placement alternative, seek a judicial environment — a termination-of-parental-rights proceeding — where, under T.V., the existence of a viable alternative prevails over permanency and the best interest of the child. Likewise, it is no wonder that these foster parents, the only parents this child has known for all but the first six months of life, seek to place themselves in a judicial environment — an adoption proceeding in the probate court — where six months’ abandonment constitutes implied consent, which, once given, cannot be revoked.
COBB, C.J., and STUART, J, concur.