14 So.3d 166 (2009)
C.E.W.
v.
P.J.G.
2070934.
Court of Civil Appeals of Alabama.
January 30, 2009.
*167 James P. Atkinson, Florence, for appellant.
Patricia M. Miles, Florence, for appellee.
THOMPSON, Presiding Judge.
C.E.W. ("the father") appeals a judgment terminating his parental rights to K.B.T. ("the child"). The allegations in the pleadings filed in this matter indicate that the child's mother was killed in an automobile accident and that the child has been in the custody of P.J.G. ("the great-aunt") since September 2005. In April 2007, the father filed a petition seeking to have his paternity of the child adjudicated. On June 14, 2007, the juvenile court entered an order adjudicating the father's paternity.
Thereafter, the parties reached an agreement allowing the father supervised visitation with the child and requiring him to pay child support. On August 3, 2007, the juvenile court entered an order incorporating the terms of that visitation and support agreement. In its August 3, 2007, order, the juvenile court also required the father to meet certain conditions before the next 90-day review hearing in the matter. Those conditions included that the father obtain stable employment, find a stable residence, have no further arrests or problems with the law, and submit to random drug testing.
On August 28, 2007, S.B. ("the paternal grandmother") moved to intervene in the matter; in that motion, the paternal grandmother also sought an award of custody of the child. In September 2007, the great-aunt filed a petition seeking to terminate the father's parental rights. The father responded by denying the material allegations of that petition.
On October 16, 2007, the juvenile court entered an order granting the paternal grandmother's motion to intervene. However, in its October 16, 2007, order, the juvenile court suspended the father's visitation rights because of the father's failure to comply with the conditions for visitation set forth in the August 3, 2007, order. The juvenile court later awarded the paternal grandmother visitation with the child. Thereafter, the paternal grandmother filed a motion seeking to have the great-aunt held in contempt; in that motion, the paternal grandmother alleged that the great-aunt had interfered with her *168 court-ordered visitation. In response, the great-aunt moved to suspend the paternal grandmother's visitation, arguing that the paternal grandmother had violated certain conditions for her visitation.
The juvenile court conducted an ore tenus hearing on the great-aunt's petition to terminate the father's parental rights. On June 16, 2008, the juvenile court entered a judgment terminating the father's parental rights. In that judgment, the juvenile court found that the child was dependent, that the father had failed to provide necessary care and support for the child, that the father had abandoned the child, and that the father had failed to maintain any relationship with the child. The juvenile court also concluded that no viable alternatives to the termination of the father's parental rights existed and that the best interest of the child would be served by the termination of the father's parental rights. The father timely appealed.[1]
The father was the only witness who testified at the termination hearing. The father testified that he had not visited the child pursuant to the August 3, 2007, order because he thought the parties were still negotiating the terms of the agreement upon which the order was based and that he did not believe that that order had "got put through." The father's testimony indicates that he objected to the imposition of the child-support portion of the August 3, 2007, order. The father was unemployed, and he testified that he had not had a job in many years. The father stated that he could not support himself or the child.
The father's attorney objected to a question inquiring whether the father had difficulty finding employment because he was a convicted felon, and the juvenile court sustained that objection. The father then answered a number of questions, including some from his own attorney, concerning his previous incarcerations. That testimony indicated that the father had been incarcerated for three years in the juvenile system, apparently in Alabama. When the father was 18 years old, he began serving time in a correctional facility in Tennessee, and he was incarcerated in that facility for 4 ½ years. After his release from the Tennessee prison, the father returned to Alabama. The father testified that he was incarcerated in the Lauderdale County detention center for approximately two months in 2007 and was again incarcerated in February 2008. The father testified that, at the time of the termination hearing, he was again serving time in the Lauderdale County detention center. The father explained that he was incarcerated for failure to appear on outstanding warrants, one of which pertained to a domestic-violence charge. The record contains no evidence pertaining to the nature of the other charges for which the father had been incarcerated during his lifetime.
The father testified that he had known the child's mother for approximately one month before he was sent to prison in Tennessee; he stated that, during the time he was in prison, the child's mother had sent him a letter informing him she was pregnant. The father testified that he had *169 never seen the child, but he stated that he had been prevented from doing so. The father acknowledged that he had not complied with the conditions in the August 3, 2007, order; he explained that "I have not adjusted. I've not had an easy time adjusting to society. No, it's not going too good."
The father also testified that he has another child, the half brother of the child at issue in this matter, who is in the custody of that child's mother. The father had seen that child before, but he stated that he did not see that child regularly. The father stated that he wanted to see the child at issue in this case and to have her know her half brother. The father was supportive of the paternal grandmother's request to visit the child, and he stated that the paternal grandmother is "great with the kids." The father then acknowledged that he is "not a very family-oriented person."
On appeal, the father first raises an evidentiary issue. The father argues that the juvenile court erred in allowing the great-aunt's attorney to question him regarding his incarcerations. Numerous questions were asked of the father on the subject of his previous incarcerations. However, the father's attorney objected to the questioning only twice. In those objections, the attorney stated only that the questions were "improper," and he did not specify the grounds upon which he was objecting. See Rule 103(a), Ala. R. Evid. (requiring a timely objection that specifies the specific ground on which it is based). Regardless, the juvenile court sustained the objections the father made. However, the great-aunt's attorney asked additional questions concerning the father's history of incarcerations, and the father did not object to those questions. The father did not file a motion in limine regarding, or seek a continuing objection with regard to the subject of, the father's incarcerations.[2] Accordingly, we conclude that any challenge to the testimony to which the father failed to object was waived. See Dutton v. Dutton, 490 So.2d 1249, 1250 (Ala.Civ.App. 1986) ("Generally, matters not objected to at trial cannot be raised for the first time on appeal."); Costarides v. Miller, 374 So.2d 1335, 1337 (Ala.1979) (same).
The father also argues that the juvenile court erred in concluding that there were no viable alternatives to the termination of his parental rights.
"In order to terminate parental rights upon a nonparent's petition, a court must make several findings: First, the court must determine that the child is dependent according to clear and convincing evidence. Second, the court must find that there exists no viable alternative to termination of the parental rights. Ex parte Beasley, 564 So.2d 950 (Ala.1990)."
A.N.S. v. K.C., 628 So.2d 734, 735 (Ala.Civ. App.1993); see also C.J. v. Marion County Dep't of Human Res., 5 So.3d 1259 (Ala. Civ.App.2008) (same).
The father relies on Ex parte Beasley, supra, in which our supreme court held:
"The two-prong test that a court must apply in a parental rights termination case brought by a custodial parent consists of the following: First, the court must find that there are grounds for the termination of parental rights, including, but not limited to, those specifically set forth in § 26-18-7. Second, after the court has found that there exist grounds *170 to order the termination of parental rights, the court must inquire as to whether all viable alternatives to a termination of parental rights have been considered. (As earlier discussed, if a nonparent [such as the great-aunt in this case], including the State, is the petitioner, then such a petitioner must meet the further threshold proof of dependency.)
"Once the court has complied with this two-prong testthat is, once it has determined that the petitioner has met the statutory burden of proof and that, having considered and rejected other alternatives, a termination of parental rights is in the best interest of the childit can order the termination of parental rights. Such a construction of the Uniform 1984 Child Protection Act clearly comports with the stated purpose for the Act."
Ex parte Beasley, 564 So.2d at 954-55
Our supreme court recently reiterated that the party seeking to terminate parental rights has the burden of proving both prongs of the test set forth in Ex parte Beasley, supra. Ex parte T.V., 971 So.2d 1, 4-5 (Ala.2007). In that case, our supreme court explained:
"Justice Smith's dissent suggests that we have ignored the trial court's factual findings regarding T.V.'s past and present inability to care for her child. 971 So.2d at 17-20. In fact, it is these factual findings that form the basis of our holding that N.V. continues to be a dependent child. However, this Court must review not only whether N.V. remains dependent, but also whether the trial court considered and rejected, based on clear and convincing evidence, the possible viable alternatives before terminating T.V.'s parental rights. See Ex parte Ogle, 516 So.2d [243] at 247 [(Ala.1987)] (holding that the party attempting to terminate a parent's parental rights has the burden to prove, by clear and convincing evidence, that there are no viable alternatives); J.D. v. Tuscaloosa County Dep't of Human Res., 923 So.2d 303, 307 n. 1 (Ala.Civ.App. 2005) (`When a nonparent such as DHR seeks to terminate parental rights, it must establish by clear and convincing evidence not only that the children are dependent but also that no viable alternative to termination of the parental rights exists.'); D.O. v. Calhoun County Dep't of Human Res., 859 So.2d [439] at 443 [(Ala.Civ.App.2003)] (`A nonparent who seeks to terminate a parent's parental rights must prove by clear and convincing evidence that the children are dependent and that there are no viable alternatives to the termination of parental rights.'); A.M. v. Lamar County Dep't of Human Res., 848 So.2d 258, 259 (Ala.Civ.App.2002) (same). The need to consider all viable alternatives is rooted, in part, in the recognition that the termination of parental rights is a drastic step that once taken cannot be withdrawn and that implicates due process. Thus, the Beasley two-pronged test is designed to protect the welfare of the child while also protecting the rights of parents. [Ex parte] Beasley, 564 So.2d [950] at 952 [(Ala.1990)]. The requirement that clear and convincing evidence support the determination to terminate parental rights is based on the need to protect the due-process rights of the parents. Santosky v. Kramer, 455 U.S. 745, 769, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). The party seeking to terminate a person's parental rights thus has the burden of producing clear and convincing evidence that there are no viable alternatives to the termination of parental rights. Ex parte Ogle, 516 So.2d at 247; see also K.W. v. J.G., 856 So.2d 859, 874 (Ala.Civ.App.2003) (holding that the party seeking to terminate the parental rights of another bears the burden *171 of proving that termination of those rights is the appropriate remedy).
"Further, as noted above, the Court of Civil Appeals has `consistently held that the existence of evidence of current conditions or conduct relating to a parent's inability or unwillingness to care for his or her children is implicit in the requirement that termination of parental rights is based on clear and convincing evidence.' D.O., 859 So.2d at 444. It is because the termination of parental rights implicates `[t]he fundamental liberty interest of natural parents in the care, custody, and management of their child,' Santosky, 455 U.S. at 753, 102 S.Ct. 1388, that such an exacting level of certainty based on evidence of the parent's current situation is required. Thus, while we must presume under the ore tenus rule that the trial court's factual findings are correct, that rule does not relieve this Court of its responsibility to ensure that those facts clearly and convincingly warrant the termination of parental rights."
971 So.2d at 8-9 (emphasis added).
In this case, the burden was on the great-aunt, as the party petitioning to terminate parental rights, to present evidence in support of each part of the two-pronged test discussed in Ex parte Beasley, supra. Ex parte T.V., supra. The only evidence presented at the termination hearing was the testimony of the father. That testimony concerned only the issue whether grounds existed pursuant to § 26-18-7, Ala.Code 1975, to warrant the termination of the father's parental rights. The record contains no evidence on the issue whether there existed viable alternatives to the termination of the father's parental rights. Thus, the record does not support a conclusion that the great-aunt met her burden with regard to the two-pronged test for the termination of parental rights, nor does it indicate that there was any evidence upon which the juvenile court could evaluate alternatives to the termination of the father's parental rights. See Ex parte Beasley, supra; Ex parte T.V., supra. Based on the foregoing, we must reverse the juvenile court's judgment terminating the father's parental rights.
REVERSED AND REMANDED.
PITTMAN and THOMAS, JJ., concur.
BRYAN and MOORE, JJ., concur in the result, without writing.
NOTES
[1] After the entry of the June 16, 2008, judgment, the father sent a June 23, 2008, handwritten letter to the juvenile court stating, in part, that he was "writing to [the court] to appeal this final [judgment] terminating my parental rights." The letter contains a notation from the juvenile court purporting to "deny" the filing on that same date, June 23, 2008. The father then, on July 7, 2008, filed a second document, titled "notice of appeal," indicating his desire to appeal the termination judgment and requesting a court-appointed attorney to represent him in the appeal. Both notices of appeal filed by the father are timely. The record also contains an untimely notice of appeal form, filed on July 11, 2008, by the father's court-appointed attorney.
[2] We do not express an opinion whether the testimony on the subject of the father's incarcerations was properly admissible.