COBB, Chief Justice
(concurring in the result).
Although I agree with the conclusion in the majority opinion that the juvenile court erred in terminating the mother’s parental rights, I disagree with the reliance in the opinion on Ex parte T.V., 971 So.2d 1 (Ala.2007). T.V. presented a situation that is distinct from the situation presented in this case. At the time of the hearing on the termination petition in T.V., the mother, a former homeless, unemployed crack addict, had already turned her life around. This Court focused on the fact that a juvenile court, in deciding whether to terminate an individual’s parental rights, must look at the parent’s current conditions. The Court in T.V. stated:
“The Court of Civil Appeals has ‘consistently held that the existence of evidence of current conditions or conduct relating to a parent’s inability or unwillingness to care for his or her children is implicit in the requirement that termination of parental rights be based on clear and convincing evidence.’ D.O. v. Calhoun County Dep’t of Human Res., 859 So.2d 439, 444 (Ala.Civ.App.2003); see also P.H. v. Madison County Dep’t of Human Res., 937 So.2d 525, 531 (Ala.Civ.App.2006) (quoting D.O.).”
971 So.2d at 5. T.V.’s conditions at the time of the hearing were exemplary and demonstrated a probability that she would be able to function appropriately as a parent. Thus, the Court in T.V. held:
“Because the trial court did not, after full consideration of all the viable alternatives to terminating T.V.’s parental rights, find clear and convincing evidence that none existed, the order terminating her rights must be reversed and the cause remanded to the trial court for a full consideration of viable alternatives to terminating of T.V.’s parental rights. See State Dep’t of Human Res. v. A.J.T., 939 So.2d 46, 47-48 (Ala.Civ.App.2006) (‘A termination of parental rights ... should occur only after consideration of all possible viable alternatives to termination, and must be in the child’s best interest.’).”
971 So.2d at 10.
In this case, the mother is in prison for shoplifting. While the mother is in prison, the child, who is now 4 years old, is being cared for by her now 82-year-old maternal *1231 grandmother.[2] The juvenile court terminated the mother’s parental rights so that the grandmother can adopt the child. The mother argues that the juvenile court erred in terminating her parental rights because, according to the mother, she can be out of prison soon and she will be able to find employment. These are events that may occur in the future; they do not represent the mother’s current conditions. Accordingly, I believe that the majority’s reliance on T.V.’s “current” conditions is misplaced.
However, T.V. does have application to the extent it requires the juvenile court to find clear and convincing evidence that no viable alternatives to the termination of parental rights exist. As applied to this case, I would hold that there was not a sufficient finding by clear and convincing evidence that the status quo, in which the grandmother maintains custody and the mother presents a reasonable likelihood that she will be able to function properly as a mother in the future, is not a viable alternative to the termination of the mother’s parental rights.

. I note that the child's 82-year-old grandmother suffers from diabetes and high blood pressure, that the grandmother has some significant physical limitations, and that the mother states that the grandmother is in poor health. The grandmother testified that, if she became physically unable to care for the child, she would want the child to be cared for by the mother if the mother was capable of caring for the child. By terminating the mother’s parental rights to allow the grandmother to adopt the child, the juvenile court has ensured that the mother would not be legally responsible for the care and support of the child in the event the grandmother was no longer physically able to care for the child and that the child would likely have to undergo further uncertainty and additional proceedings to determine who would have ultimate custody of her. It appears that changing the status quo and terminating the mother's parental rights is not a reliable way to obtain stability, security, and permanency for the child and is therefore not in the best interest of the child. See Ex parte J.R., 896 So.2d 416, 423 (Ala.2004) (" ‘[T]he paramount concern in ... proceedings [to terminate parental rights] is the child’s best interests.’ ” (quoting J.V. v. State Dep’t of Human Res., 656 So.2d 1234, 1235 (Ala.Civ.App.1995))); cf. Ex parte J.E., 1 So.3d 1002, 1013 (Ala.2008) (Cobb, C.J., concurring specially) ("[T]his is not a case in which maintenance of the status quo would thwart the goal of ultimately providing the child permanent placement in a safe environment.... ”).