Rel: May 23, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2024-2025

_____

## CL-2024-0659

_____

## T.J.R.-L.

## v.

## B.M.

## Appeal from Randolph Circuit Court
## (JU-23-15.02)

PER CURIAM.

T.J.R.-L. ("the father") appeals from a judgment of the Randolph Circuit Court ("the circuit court") terminating his parental rights to E.J.R.-L. ("the child"), who was born on February 26, 2017, and finding

that he had impliedly consented to the adoption of the child. We dismiss the appeal in part and affirm the judgment in part.

Procedural History

On January 18, 2023, B.M. ("the mother") filed in the Randolph Juvenile Court ("the juvenile court") a petition to terminate the father's parental rights to the child. The mother asserted in her petition, among other things, that the father had abandoned the child; that her husband, J.G.M. ("the stepfather"), "is the sole father figure the ... child has ever known"; and that an adoption proceeding involving the child ("the adoption action") was pending in the Randolph Probate Court ("the probate court"). On June 1, 2023, the father filed an answer to the termination-of-parental-rights petition and a counterclaim in which he sought to establish his paternity of the child and requested an award of joint legal custody of the child and visitation.

On November 7, 2023, the juvenile court entered an order adjudicating the father's paternity of the child. After a trial on February 14, 2024, the juvenile court entered, on March 7, 2024, a judgment terminating the father's parental rights to the child. On March 21, 2024, the father filed a notice of appeal to this court. On March 27, 2024, the

juvenile court entered, pursuant to Rule 28(A)(1)(c)(i), Ala. R. Juv. P., an order finding that the record of the proceedings was not adequate for purposes of appeal; accordingly, this court entered an order, pursuant to Rule 28(B) and (E), Ala. R. Juv. P., transferring the appeal to the circuit court for a trial de novo. On August 7, 2024, the circuit court entered a judgment terminating the father's parental rights to the child. The circuit court noted at the outset of the judgment that the stepfather had initiated the adoption action in the probate court and that the adoption action had been "transferred and consolidated with the termination action on June 13, 2024, by order of the … probate judge." After terminating the father's parental rights, the circuit court proceeded to determine that the father had impliedly consented to the stepfather's adoption of the child. The circuit court then stated: "The court finds that [the stepfather's] adoption petition shall be transferred back to [the probate court] to be finalized in accordance with the laws of this State." On August 20, 2024, the father filed his notice of appeal to this court.

Issues

On appeal, the father asserts that this court lacks jurisdiction over the appeal, that the termination of the father's parental rights is not

3

supported by clear and convincing evidence, and that the circuit court's finding that the father had impliedly consented to the child's adoption is unsupported by the evidence.

## Jurisdiction

We must first address the father's arguments as they relate to this court's jurisdiction over the appeal. "'[J]urisdictional matters are of such magnitude that we take notice of them at any time and do so even ex mero motu.'" Wallace v. Tee Jays Mfg. Co., 689 So. 2d 210, 211 (Ala. Civ. App. 1997) (quoting Nunn v. Baker, 518 So. 2d 711, 712 (Ala. 1987)). The father asserts in his brief to this court that, because no dependency proceeding related to the child was pending at the time the mother filed her petition to terminate his parental rights, the juvenile court lacked jurisdiction over the petition. At one time, the Alabama Juvenile Justice Act ("the AJJA"), Ala. Code 1975, § 12-15-101 et seq., vested juvenile courts with jurisdiction over petitions to terminate parental rights only when the petition arose out of earlier juvenile-court proceedings. See W.B.B. v. H.M.S., 141 So. 3d 1062, 1063 (Ala. Civ. App. 2013). However, in 2014, the legislature amended the AJJA to provide that juvenile courts have exclusive original jurisdiction over all petitions to terminate

parental rights. See Ala. Acts 2014, Act No. 2014-350, § 1, p. 1299. Section 12-15-114(c)(2), Ala. Code 1975, currently provides that juvenile courts have exclusive original jurisdiction over petitions to terminate parental rights. Thus, the juvenile court had jurisdiction over the mother's petition to terminate the father's parental rights even though that petition did not arise out of a dependency proceeding.

The father further argues that, because an adoption action was pending in the probate court, the juvenile court lacked subject-matter jurisdiction over the termination petition. This court has acknowledged that "adoption actions in probate court and dependency and/or termination actions in juvenile court are not the same causes of action and that, in many instances, dependency or termination actions and adoption actions occur simultaneously." T.C.M. v. W.L.K., 208 So. 3d 39, 44 (Ala. Civ. App. 2016). The fact that an adoption action is pending in a probate court does not divest a juvenile court of its exclusive original jurisdiction over a petition to terminate parental rights. Accordingly, we cannot conclude that the pendency of the adoption action in the probate court at the time the mother commenced her termination-of-parental-rights action in the juvenile court, without more, prevented the juvenile

court from exercising jurisdiction over the mother's petition to terminate the father's parental rights pursuant to § 12-15-114(c)(2).

The father also argues that this court lacks jurisdiction over this appeal because, he says, the circuit court's judgment is nonfinal. The record indicates that the circuit court's judgment is final as it relates to the action to terminate the father's parental rights. That judgment terminates the parental rights of the father and awards the mother permanent custody of the child. See Ala. Code 1975, § 12-15-320. However, the circuit court did not enter a final judgment in the adoption action, finding only that the father had impliedly consented to the adoption and purporting to transfer the adoption action back to the probate court to finalize the adoption. See Ex parte W.L.K., 175 So. 3d 652, 656 (Ala. Civ. App. 2015) (explaining that an order resolving an adoption contest but not resolving the entire adoption action was an interlocutory order under the former Alabama Adoption Code).[1]

---

[1]The adoption action was commenced before January 1, 2024, and is, therefore, governed by the former Alabama Adoption Code, Ala. Code 1975, former § 26-10A-1 et seq. See Ex parte H.W., [Ms. CL-2024-0382, Aug. 2, 2024] ___ So. 3d ___ (Ala. Civ. App. 2024). Because the appellate record does not contain the transfer order from the probate court, it is unclear whether the adoption action was transferred in whole or in part to the circuit court. See Ex parte A.M.P., 997 So. 2d 1008, 1017 (Ala. 2008)

Accordingly, this court has appellate jurisdiction over only the final judgment concluding the termination action; it does not have appellate jurisdiction over the nonfinal judgment relating to the adoption action, which is still pending. See Nettles v. Rumberger, Kirk & Caldwell, P.C., 276 So. 3d 663, 669 (Ala. 2018) ("Once a final judgment has been entered in a case, it is immediately appealable, regardless of whether it is consolidated with another still pending case."). Accordingly, we dismiss the appeal insofar as it seeks review of the nonfinal judgment entered in the adoption action, and we proceed to consider only the appeal of the final judgment entered in the termination action.

## Standard of Review

In R.H. v. Madison County Department of Human Resources, 383 So. 3d 667, 672 (Ala. Civ. App. 2023), this court outlined the applicable standard of review:

> "Appellate courts must apply a presumption of correctness in favor of the juvenile court's findings based on ore tenus evidence presented in a termination-of-parental-

---

(discussing the various transfer mechanisms by which a juvenile court may acquire jurisdiction over an adoption action). Regardless of the transfer mechanism, the circuit court's judgment as it relates to the adoption action was not a final judgment because it did not approve or deny the adoption petition. See Ex parte W.L.K., supra.

7

rights action and will reverse a juvenile court's judgment terminating parental rights only if the record shows that the judgment is not supported by clear and convincing evidence. J.C. v. State Dep't of Hum. Res., 986 So. 2d 1172, 1183 (Ala. Civ. App. 2007). 'This court does not reweigh the evidence but, rather, determines whether the findings of fact made by the juvenile court are supported by evidence that the juvenile court could have found to be clear and convincing.' K.S.B. v. M.C.B., 219 So. 3d 650, 653 (Ala. Civ. App. 2016). Clear and convincing evidence is evidence that, 'when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion.' § 6-11-20(b)(4), Ala. Code 1975. 'Proof by clear and convincing evidence requires a level of proof greater than a preponderance of the evidence or the substantial weight of the evidence, but less than beyond a reasonable doubt.' Id."

Analysis

Section 12-15-319(a), Ala. Code 1975, provides, in pertinent part:

"If the juvenile court finds from clear and convincing evidence, competent, material, and relevant in nature, that the parent[] of a child [is] unable and unwilling to discharge [his or her] responsibilities to and for the child, or that the conduct or condition of the parent[] renders [him or her] unable to properly care for the child and that the conduct or condition is unlikely to change in the foreseeable future, it may terminate the parental rights of the parent[].  In a hearing on a petition for termination of parental rights, the court shall consider the best interests of the child."

 The circuit court determined, among other things, that the father had abandoned the child, see § 12-15-319(a)(1); that the duration and nature of the father's mental illness renders him unable to care for the

8

needs of the child, see § 12-15-319(a)(2); that the father had failed to provide for the material needs of the child or to pay a reasonable portion of support for the child when he was otherwise able to do so, see § 12-15-319(a)(9); and that the father had failed to maintain regular visits with the child or to maintain consistent contact or communication with the child, see § 12-15-319(a)(11).

The father first argues that the circuit court erred in concluding that he had abandoned the child. "Abandonment" is defined in § 12-15-301(1), Ala. Code 1975, as:

> "A voluntary and intentional relinquishment of the custody of a child by a parent, or a withholding from the child, without good cause or excuse, by the parent, of his or her presence, care, love, protection, maintenance, or the opportunity for the display of filial affection, or the failure to claim the rights of a parent, or failure to perform the duties of a parent."

The mother testified that she and the father had been in a romantic relationship at the time the child was born and that she and the father had resided together, with the child, for approximately one year before she and the father separated in 2018. According to the mother, she had taken the child to visit the father every weekend at the home in Georgia where he resided with his mother and his grandmother for approximately five to six months, but, she said, she had discontinued those weekly visits

9

after learning that the father's grandmother was caring for the child every night when the father went to bars. The mother testified that, between 2018 and 2020, she had initiated six visits between the father and the child, that those visits had lasted for a couple of hours each and had ended in arguments between her and the father, and that the father had not contacted her to check on the child or asked to see the child after those visits. The mother admitted that, sometime between 2018 and 2020, she had blocked the father's telephone number and had informed the father that he could not visit the child without a court order and that, shortly thereafter, the father had appeared at her house, unannounced, on Easter in 2020, attempting to see the child. Additionally, the mother admitted that, in 2019, she had sent the father a text message telling him not to "come … around."

On July 24, 2020, the father filed a petition for legitimation and to establish custody and visitation of the child in Carroll County, Georgia. According to the mother, the father did not visit the child during the pendency of the legitimation action, which was resolved on June 7, 2022, when the Georgia court entered a judgment denying the father's petition. She testified that the father had telephoned her on two occasions during

10

the pendency of the legitimation action, that she did not believe that his telephone calls were about the child, that one of the calls had occurred shortly before the trial in the legitimation action, and that the father had behaved aggressively and had used foul language toward her during those calls. The mother admitted that she had sought to serve the father with the termination petition by publication and had not attempted to contact the father's family members, with whom he had previously resided, because she was attempting to sneak the termination of the father's parental rights past him.

The father testified that, after the parties separated, he had visited the child every weekend for at least six months but that the mother had stopped allowing him to see the child when he had informed her that he had entered a new relationship. According to the father, because he had been unable to contact the mother, he appeared at her house on Easter 2020. The father stated that the mother had allowed him to visit the child approximately 6 to 10 times thereafter before she told him that he would have to get the courts involved for him to see the child, which, he said, had led him to commence the legitimation action. When asked whether he could have appealed the judgment denying his legitimation

petition or moved to set that judgment aside, the father answered in the negative, based on the mother's having moved to Alabama.

The father argues that, because his efforts to contact and visit the child were rebuffed by the mother, the circuit court erred in concluding that his actions were voluntary or that they meet the definition of abandonment. He cites B.B. v. J.P., 388 So. 3d 710 (Ala. Civ. App. 2023), and K.G. v. J.T., 382 So. 3d 1257 (Ala. Civ. App. 2023), in support of his argument that the evidence presented does not support the circuit court's finding of abandonment. In B.B., this court determined that there was evidence indicating that B.B. had made attempts to be involved in her children's lives but that the children's custodian had denied her visitation and contact with the children such that the conclusion that B.B. had abandoned her children was not properly supported by the evidence. 388 So. 3d at 715. In K.G., this court determined that evidence indicating that K.G. had made numerous efforts to contact her child but that she had been blocked from having any contact with her child by the child's custodial parent would not support a finding that K.G. had abandoned her child. 382 So. 3d at 1261.

12

In <u>C.C. v. L. J.</u>, 176 So. 3d 208, 213 (Ala. Civ. App. 2015), this court affirmed a judgment determining that C.C. had abandoned his child, J.C., despite arguments by C.C. that J.C.'s mother had alienated him from J.C. This court stated, in pertinent part:

> "[C.C.] maintains that the evidence shows that, after he broke up with [J.C.'s] mother in 2010, [J.C.'s] mother had purposefully alienated him from [J.C.] and that he, therefore, had a good excuse for not visiting with, supporting, or otherwise parenting [J.C.]. Hence, [C.C.] argues, the juvenile court erred in finding that he had abandoned [J.C.]. However, from its own independent weighing of the competing and somewhat conflicting evidence, see <u>Ex parte McInish</u>, [47 So. 3d 767 (Ala. 2008)], the juvenile court reasonably could have determined that [J.C.'s] mother had done nothing to prevent [C.C.] from developing a parental relationship with [J.C.] and that [C.C.] had voluntarily, intentionally, and unjustifiably forgone a relationship with [J.C.], had failed or refused to financially support [J.C.], and had failed or refused to act as a parent toward [J.C.]. This court may not reweigh the evidence to overturn the judgment of a trial court. See <u>Ex parte T.V.</u>, 971 So. 2d 1, 9 (Ala. 2007)."

176 So. 3d at 213. Additionally, in <u>W.W. v. H.W.</u>, 384 So. 3d 663, 670 (Ala. Civ. App. 2023), this court concluded that the trial court's finding that W.W. had abandoned his child was supported by the evidence despite arguments that the child's mother, H.W., had blocked contact between W.W. and the child. This court noted that the totality of W.W.'s conduct, including his conduct before H.W. blocked his contact with the

13

child and his failure to attempt to enforce his visitation rights with the child, supported the finding that W.W. had abandoned the child. Id.

In the present case, the circuit court made findings of fact in its judgment terminating the father's parental rights, including, among other things, that, after the parties separated, the father was not spending time with the child during their visits but, instead, was going to downtown Carrollton, Georgia, to visit bars; that, after his weekly visits had been discontinued, the father had essentially disappeared from the child's life; that the father had failed to attempt to contact the mother to check on the child or to otherwise promote a relationship with the child following visits that had been initiated by the mother after his weekly visits had been discontinued; that those visits that the mother had initiated had lasted only a couple of hours, during which the father had exhibited hostility toward the mother; and that the father had not appealed the judgment in the legitimation action and had contacted the mother only twice during the pendency of that action, which contacts were not about inquiring into the well-being of the child and had resulted in the father's using foul language toward the mother. Like in C.C., this court cannot reweigh the evidence. Although evidence was presented

14

indicating that the mother had made efforts to block contact from the father, the circuit court's findings that the father had failed to pursue contact and visitation with the child or to pursue a relationship with the child at other times is supported by the evidence presented. Accordingly, we cannot conclude that the circuit court erred in finding that the father had abandoned the child.

Having determined that the evidence supports the circuit court's finding of abandonment as a basis for terminating the father's parental rights, we decline to address the father's argument insofar as he challenges the remaining grounds cited by the circuit court in support of the termination of his parental rights.

Conclusion

Insofar as the father challenges on appeal the circuit court's judgment as it relates to the adoption action, we dismiss the appeal. Regarding that portion of the circuit court's judgment relating to the termination action, the judgment is affirmed.[2]

---

[2]The mother argues that the judgment terminating the parental rights of the father moots his contest to the adoption petition because consent to an adoption is not required of a parent whose parental rights have been terminated. See Ala. Code 1975, former § 26-10A-10(a).

15

APPEAL DISMISSED IN PART; JUDGMENT AFFIRMED IN PART.

Moore, P.J., and Edwards and Hanson, JJ., concur.

---

Because we have no appellate jurisdiction over the judgment as it relates to the adoption action, we do not address this point.