THOMPSON, Presiding Judge.
The Calhoun County Department of Human Resources (“DHR”) filed a complaint seeking to terminate the parental rights of L.S. (“the father”) and C.T. (“the mother”) to their child, M.J.C. The juvenile court conducted an ore tenus hearing. On February 28, 2008, the juvenile court entered an order terminating the mother’s and the father’s parental rights. The mother filed a postjudgment motion, which the juvenile court denied. The mother timely appealed.[1]
The record indicates that DHR first removed the child from the mother’s custody in August 2004. At that time, the mother was using illegal drugs and was involved in an abusive relationship with a man who was not the child’s father. The child was returned to the mother’s home on four separate occasions. The shortest of those reunifications lasted less than one month, and the longest was five months in duration. On each of the four occasions in which the child was returned to her mother’s home, the child was subsequently removed from the mother’s custody either because of domestic-violence concerns or because the mother failed to pass random drug-screen tests. The child has remained in the custody of DHR continuously since September 2006.
DHR attempted to place the child in two separate relative placements. The child was briefly placed with her maternal grandmother. However, DHR social workers learned that in the month before that placement began, the grandmother had been charged with a drug-related crime, and, therefore, the child was removed from her home.
In July 2007, the child was placed in the home of D.C. and P.C., a paternal great-uncle and great-aunt. However, in November 2007, D.C. and P.C. informed DHR social workers that they could not serve as a long-term placement for the child; they were, however, willing to allow the child to remain with them until DHR *986 located a permanent placement for the child. The mother also has twin sons born in August 2005 who are currently in the custody of relatives; those relatives were unwilling to serve as a placement for the child at issue in this case. Since she has been in the home of D.C. and P.C., the child has visited the twins at least monthly.
The record indicates that since August 2004, when she was first placed in DHR’s custody, the child has been moved approximately 20 times; those 20 moves include the instances in which the child was returned to the mother and then removed from her care and the occasions when she was placed with relatives. Dona Crow, the child’s counselor, testified that the child has an adjustment disorder as a result of the frequent changes in her life; the child has exhibited oppositional behavior, tantrums, and moodiness as a result of that disorder. According to Crow, the child regresses and her behaviors worsen when she is relocated to another residence and when she becomes disappointed after having some hope that the situation will change and she will be allowed to return to her mother’s home. Crow opined that the child could suffer irreparable harm if she were not provided a permanent home; Crow expressed concern about the child’s future ability to form lasting bonds and relationships with others if the pattern of frequent upheavals persists. Crow believes that the child’s need for, and the resulting benefit of, a permanent placement will offset the child’s grief at losing a relationship with the twins.
Christina Kilgroe, the DHR social worker who was assigned this case until the end of November 2007, testified that she had requested the names of possible relative resources from the mother, the maternal grandmother, D.C. and P.C., and all relatives of the child to whom she spoke. Most relatives identified by those people were not interested in taking the child. One of D.C.’s brothers, J.C., expressed interest in serving as a relative resource, but DHR did not conduct a home study on his home. Kilgroe explained that J.C. had indicated that he wanted to take the child only if custody was permanently removed from the mother or the mother’s parental rights were terminated. According to D.C., J.C. ultimately decided against serving as a placement for the child.
Lessie Culver, the DHR social worker assigned the case in late November 2007 or early December 2007, testified that she had unsuccessfully attempted to contact the mother after she received the case. Culver testified that in January 2008, in anticipation of the February 2008 termination hearing, she asked the mother’s family members for names of possible resources for the child. Culver stated that D.C. informed her that he would speak to other relatives to see if they would be interested in taking the child. Culver stated that the only names provided to her concerning possible relative placements for the child were J.C. and the couple who had custody of the twins; those relatives were unwilling or unable to take the child.
At the February 20, 2008, termination hearing, D.C. testified that another of his brothers, Jo.C., was willing to take the child. Kilgroe and Culver both testified that Jo.C. had never been mentioned by the mother, D.C., or any family member as a possible relative resource, and each testified that the first time they had heard of Jo.C. was on the morning of the termination hearing.
D.C. explained that although he had spoken with other family members after November 2007 about taking the child, he had not talked to Jo.C. about the possibility of his providing a home for the child. D.C. testified that Jo.C. had expressed interest in serving as a placement for the child approximately one week before the termi *987 nation hearing. According to D.C., Jo.C. had children close in age to the child; D.C. also stated that, while living in D.C.’s home, the child had seen Jo.C. at least monthly. D.C. explained that Jo.C., who lives in Louisiana, is divorced and visits his children in Alabama every other weekend. During those visits, Jo.C. visits other family as well, including D.C., P.C., and the child. According to D.C., Jo.C. is seeking to purchase a home in Alabama; it is not clear whether he has plans to move to Alabama.
The mother testified that she had talked to Jo.C. about his interest in serving as a placement for the child several times in the months before the termination hearing. According to the mother, Jo.C. had consulted an attorney about the matter. However, Jo.C. had not contacted DHR about his interest in the child, and he did not appear at the termination hearing.
In this case, the juvenile court received ore tenus evidence on DHR’s complaint seeking to terminate the parents’ parental rights. The juvenile court’s judgment based on that ore tenus evidence is presumed to be correct and will not be overturned absent a showing that the judgment is plainly and palpably wrong. S.B.L. v. Cleburne County Dep’t of Human Res., 881 So.2d 1029, 1081-32 (Ala.Civ.App.2003).
“ ‘A parent has a prima facie right to custody of his or her child and this right can be overcome only by clear and convincing evidence that the child’s best interests would be served by permanently terminating the parent’s custody.’ Ex parte State Dep’t of Human Res., 624 So.2d 589, 591 (Ala.1993)(citing R.C.M. v. State Dep’t of Human Res., 601 So.2d 100 (Ala.Civ.App.1991)). When the State is petitioning to terminate a parent’s parental rights, the trial court must first determine if the child is dependent and then must examine whether all viable alternatives to termination have been explored. Ex parte Beasley, 564 So.2d 950 (Ala.1990). On appeal, the trial court’s determination is presumed to be correct, and it will not be reversed absent a showing that the decision is so unsupported by the evidence as to be plainly and palpably wrong. Ex parte State Dep’t of Human Res., supra.”
W.C. v. State Dep’t of Human Res., 887 So.2d 251, 256 (Ala.Civ.App.2003). The paramount consideration in a case involving the termination of parental rights is the best interests of the children. Q.F. v. Madison County Dep’t of Human Res., 891 So.2d 330, 335 (Ala.Civ.App.2004); S.B.L. v. Cleburne County Dep’t of Human Res., 881 So.2d at 1032; and J.L. v. State Dep’t of Human Res., 688 So.2d 868, 869 (Ala.Civ.App.1997).
The mother does not dispute the juvenile court’s determinations that the child is dependent and that she is unwilling or unable to discharge her parental responsibilities to the child. The only issue the mother raises on appeal is her argument that the juvenile court erred in finding that there existed no viable alternatives to the termination of her parental rights. In her brief on appeal, the mother identifies placing the child with Jo.C. as the sole alternative to the termination of her parental rights.
This court has stated that “DHR must present ‘evidence of recent attempts to locate viable alternatives in order to establish that termination of parental rights is the least dramatic alternative.’ ” V.M. v. State Dep’t of Human Res., 710 So.2d 915, 921 (Ala.Civ.App.1998) (quoting Bowman v. State Dep’t of Human Res., 534 So.2d 304, 306 (Ala.Civ.App.1988)) (emphasis added in V.M.). In V.M., supra, this court held that the trial court had erred in concluding that there were no viable alterna- *988 fives to the termination of the mother’s parental rights. In that case, the children’s grandmother had earlier refused to take custody of them. However, for approximately two years before the termination hearing, the grandmother had expressed a willingness to take the children; DHR rejected her primarily due to her earlier lack of interest. This court, however, held that DHR, which did not conduct a home study or other investigation of the grandmother, had failed to present evidence of “recent ” attempts to find an alternative to the termination of the mother’s parental rights through its failure to investigate the grandmother as a possible relative placement for the child. V.M., 710 So.2d at 921.
In this case, however, DHR presented evidence of its recent attempts to locate relative placements for the child as an alternative to the termination of the mother’s parental rights. The DHR social workers had investigated all the potential resources identified by the mother or members of her family before the termination hearing. Culver testified that in January 2008, the month before the termination hearing, she had again asked for names of potential relative resources and that she had been given the same names DHR had already been provided; those potential resources were either unwilling or unable to serve as a placement for the child. Thus, DHR presented evidence of its recent attempts to locate an alternative to the termination of the mother’s parental rights. It is undisputed, however, that before the date of the termination hearing, neither the mother nor any member of her family had mentioned Jo.C. to the DHR social workers and that they had not indicated that Jo.C. might be willing to serve as a relative placement for the child. The mother does not explain how she believes DHR could have investigated Jo.C. as a possible relative resource.
Rather, the mother contends that DHR offered no evidence concerning Jo.C. or his home that would prevent a finding that Jo.C. could serve as a relative placement for the child.[2] The mother cites Ex parte J.R., 896 So.2d 416 (Ala.2004), for the proposition that DHR had the burden of investigating Jo.C. and proving that he was not a viable placement alternative for the child. See also D.S.S. v. Clay County Dep’t of Human Res., 755 So.2d 584, 591 (Ala.Civ.App.1999) (“[W]e now explicitly hold, DHR — not the prospective custodian — has the burden of initiating investigations, and it is DHR’s burden to prove the unsuitability of one who seeks to be considered as the custodian of a dependent child.”).
In Ex parte J.R., supra, a dependent child’s aunt and uncle were interested in serving as a relative placement for the child and had “pursued that interest through two levels of court proceedings.” 896 So.2d at 428. The trial court concluded, among other things, that there were no viable alternatives to the termination of the mother’s parental rights. This court reversed, concluding that because DHR had failed to present evidence indicating that the aunt and uncle would not be an appropriate relative placement for the child, the trial court had erred in finding that no viable alternatives to termination existed. Id.
The facts of this case are clearly distinguishable from those of Ex parte J.R., supra. In that case, the potential relative resources had been made known to DHR *989 and had actively sought to become a relative placement for the child. In this case, however, it is undisputed that the mother and her family members first named Jo.C. as a possible relative resource on the morning of the termination hearing. Thus, DHR had no knowledge of the existence of this purported possible relative resource, and, therefore, it had no opportunity to investigate him. The mother has identified no caselaw indicating that the courts must delay consideration of the termination of a parent’s parental rights because a parent has, immediately before or during a termination hearing, identified a new possible relative resource for the child. In fact, our caselaw indicates otherwise. In B.S. v. Cullman County Department of Human Resources, 865 So.2d 1188 (Ala.Civ.App.2003), the mother questioned a possible relative resource about her willingness to serve as a placement for the child for the first time during the termination hearing. This court held that the last-minute mentioning of a possible relative resource “was not sufficient” to establish “a truly viable alternative to the termination of the mother’s parental rights.” B.S. v. Cullman County Dep’t of Human Res., 865 So.2d at 1197. Similarly, in this case, the mother’s identifying for the first time during the termination hearing Jo.C. as a possible relative resource for the child does not constitute the advancement of a viable alternative to the termination of her parental rights.
We also note that, in this case, there is no direct evidence that Jo.C. is actually willing to be considered as a relative resource or that he might be a suitable placement. Jo.C. did not contact DHR or appear at the termination hearing to provide information on those issues. Given the facts of this case, we find the mother’s argument that DHR failed to meet its burden of presenting evidence of Jo.C.’s unsuitability as a potential relative resource for the child to be unpersuasive.
We cannot say that the mother has demonstrated that the juvenile court erred in concluding, based on the evidence presented to it at the termination hearing, that there were no viable alternatives to the termination of her parental rights. Accordingly, we affirm the juvenile court’s judgment.
AFFIRMED.
PITTMAN, BRYAN, and THOMAS, JJ., concur.
MOORE, J., concurs in the result, without writing.

. The father did not appear at the termination hearing, and he did not appeal the juvenile court's February 28, 2008, judgment.

. The mother also asserts that DHR erred in failing to present evidence that her home was not a suitable placement for the child. The mother has conceded, however, that the child is dependent and that she is unable to provide a suitable home for the child or to meet the child's needs.