MOORE, Judge.
K.R.S. ("the mother") appeals from a judgment of the DeKalb Juvenile Court ("the juvenile court") terminating her parental rights to H.S., J.S., and D.S. ("the children"). We affirm the juvenile court's judgment.
Procedural History
On June 21, 2016, the DeKalb County Department of Human Resources ("DHR") filed separate petitions seeking to terminate the parental rights of the mother and S.S. ("the father") to H.S. (case number JU-13-102.03), to J.S. (case number JU-13-103.03), and to D.S. (case number JU-13-104.03). Following a trial on September 15, 2016, the juvenile court entered a single judgment in all three cases on October 7, 2016, terminating the parental rights of the mother and the father to the children. On October 20, 2016, the father filed a postjudgment motion in the three cases. The mother filed her notice of appeal relating to the three cases to this court on *912 October 20, 2016; that appeal was held in abeyance until November 1, 2016, the date on which the juvenile court entered an order denying the father's postjudgment motion. See Rule 4(a)(5), Ala. R. App. P. The father has not appealed.
Issue
To terminate parental rights, a juvenile court must find grounds for termination and must consider and reject all other viable alternatives. Ex parte Beasley, 564 So.2d 950, 955 (Ala. 1990). In this case, the mother, who testified at trial that she was not capable of caring for the children at the time, does not contest that the juvenile court properly found grounds for termination. See Ala. Code 1975, § 12-15-319 (providing that a juvenile court may terminate the parental rights of a parent who is unable to discharge his or her parental responsibilities to and for his or her children). The mother argues, however, that the evidence does not support the juvenile court's determination that there was no other viable alternative to termination of her parental rights. Specifically, the mother contends that the juvenile court could have placed the children in the custody of their maternal aunts and their husbands without terminating her parental rights.
Standard of Review
The determination of whether a viable alternative to termination of parental rights exists in a given case is a question of fact for the juvenile court. T.V. v. B.S., 7 So.3d 346, 352 (Ala. Civ. App. 2008). At trial, the party petitioning for termination of parental rights bears the burden of proving the lack of a viable alternative by clear and convincing evidence. See Ex parte Ogle, 516 So.2d 243, 247 (Ala. 1987). Clear and convincing evidence is " ' "[e]vidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion." ' " C.O. v. Jefferson Cty. Dep't of Human Res., 206 So.3d 621, 627 (Ala. Civ. App. 2016) (quoting L.M. v. D.D.F., 840 So.2d 171, 179 (Ala. Civ. App. 2002), quoting in turn Ala. Code 1975, § 6-11-20(b)(4) ).
" '[T]he evidence necessary for appellate affirmance of a judgment based on a factual finding in the context of a case in which the ultimate standard for a factual decision by the trial court is clear and convincing evidence is evidence that a fact-finder reasonably could find to clearly and convincingly ... establish the fact sought to be proved.'
" KGS Steel[, Inc. v. McInish,] 47 So.3d [749] at 761 [ (Ala. Civ. App. 2006) ].
"To analogize the test set out ... by Judge Prettyman [in Curley v. United States, 160 F.2d 229, 232-33 (D.C. Cir. 1947),] for trial courts ruling on motions for a summary judgment in civil cases to which a clear-and-convincing-evidence standard of proof applies, 'the judge must view the evidence presented through the prism of the substantive evidentiary burden'; thus, the appellate court must also look through a prism to determine whether there was substantial evidence before the trial court to support a factual finding, based upon the trial court's weighing of the evidence, that would 'produce in the mind [of the trial court] a firm conviction as to each element of the claim and a high probability as to the correctness of the conclusion.' "
Ex parte McInish, 47 So.3d 767, 778 (Ala. 2008). This court does not reweigh the evidence but, rather, determines whether the findings of fact made by the juvenile court are supported by evidence that the juvenile court could have found to be clear *913 and convincing. See Ex parte T.V., 971 So.2d 1, 9 (Ala. 2007). When those findings rest on ore tenus evidence, this court presumes their correctness. Id.
Facts
The facts pertinent to the issue on appeal are as follows. DHR has been involved with the family since February 2013 when the mother was arrested for public intoxication and for driving under the influence while the children were in the vehicle. Over the next three years, the mother struggled with substance-abuse problems until she overdosed in April 2016. At trial, the mother testified that she had not used any illegal drugs since she overdosed and that she was "clean." The mother testified, however, that she was not in a position to care for the children at the time of the trial. The mother stated that she did not want the children in foster care and that she wanted what was best for the children. She stated that, if they could not be returned to her, she wanted them to stay with her sisters, the children's maternal aunts, which, she said, was the best place for them.
The children temporarily resided with K.B., one of their maternal aunts, and her husband, J.B., from February 2013 to May 2013 following DHR's initial involvement with the family. The children were returned to the custody of their parents in May 2013, but the parents separated in August 2013 and the mother and the children moved in with the mother's uncle. At some point, the family reunited in a home in Henagar, but DHR determined that the parents were abusing drugs again and arranged for the children to move in with L.S., their paternal grandmother. In May 2015, DHR removed the children from L.S.'s home, after she complained that she could no longer keep the children because of problems she was having with the mother and the father, and placed the children together in foster care.
DHR later moved J.S. into a group home for boys in Huntsville. Tangela Williams, an employee of DHR, stated that H.S. and D.S. were moved to a different foster-care placement in June or July 2015. In April 2016, D.S. was placed with K.B. and J.B., and, in July 2016, DHR placed H.S. and J.S. in the home of K.S., another of their maternal aunts, and her husband, Je.S. The children continued to reside with their maternal aunts and their husbands at the time of the trial. Williams testified that the children were doing "great" in the care of the maternal aunts and their husbands and that the children maintained contact with each other and spoke to each other weekly.
K.B. testified that she and J.B. wanted to adopt D.S. K.B. testified that they did not want merely to have custody of D.S. without a termination of the mother's parental rights. K.B. explained that she had two children of her own and that it had disrupted the structure and emotional stability of her family when the children had come to live with them in 2013 only to be returned to the mother months later. K.B. testified that she did not want to accept custody subject to the possibility that the mother could regain custody later, causing further pain after she had made the effort to provide a safe environment for D.S. Additionally, K.B. testified that she wanted to protect her children and D.S. from the mother's bringing her "issues" into their home. K.B. repeated that she would maintain custody of D.S. only upon the condition that the mother's parental rights were terminated. K.B. testified that the child-custody issues had been ongoing since 2013 and that she could not care for D.S. or act as a resource for the mother without termination of the parents' parental rights.
J.S. and H.S. indicated that they did not want to be adopted, and K.S. testified that she would accede to their wishes. However, *914 K.S. testified that she and Je.S. still wanted J.S. and H.S. to live with them permanently, without having to worry that their custody could be disrupted through future court proceedings. She testified that she wanted the children to have stability and to continue their relationship with one another, which, she said, she and her husband had facilitated. K.S. testified that she wanted the parental rights of the parents to be terminated.
Jane Bonds, the service-casework supervisor for DHR, testified that, if the children did not remain in their custodial placements with the maternal aunts and their husbands, DHR would be separating them and placing them in foster homes with people that were unfamiliar to the children. Bonds testified that, if K.S. and Je.S. were to keep J.S. and H.S., they would still be separated from D.S. if the parental rights of the mother and the father were not terminated. Bonds testified that termination of parental rights would provide certainty and permanency for the children and the maternal aunts and their husbands, who otherwise would be unwilling to retain custody of the children. Bonds testified that termination of parental rights would be the only method for assuring that the parents could not attempt to regain custody.
Discussion
As stated previously, a juvenile court cannot terminate parental rights when a viable alternative exists. See J.B. v. DeKalb Cty. Dep't of Human Res., 12 So.3d 100 (Ala. Civ. App. 2008). In this context, an alternative is "viable" when it is available to the juvenile court as an alternative means of successfully protecting the children from parental harm while serving their best interests. See J.B. v. Cleburne Cty. Dep't of Human Res., 991 So.2d 273, 283 (Ala. Civ. App. 2008). In this case, the undisputed evidence indicates that it would serve the best interests of the children to be in the custody of the maternal aunts and their husbands and that the maternal aunts and their husbands would adequately protect the children from parental harm. Therefore, the question for the juvenile court was whether that alternative was available as an alternative to termination of parental rights.
From the testimony of the witnesses, the juvenile court could have been clearly convinced that the maternal aunts and their husbands would maintain continuing custody of the children only if they were assured that the mother could not disrupt that custody in the future. Bonds correctly testified that the conditions established by the maternal aunts could be accomplished only by a termination of parental rights. Under Alabama law, an award of the custody of a dependent child, without a termination of parental rights, is always subject to modification based on changed circumstances. See M.W.H. v. R.W., 100 So.3d 603 (Ala. Civ. App. 2012). A termination of parental rights, on the other hand, "necessarily precludes the parent from later attempting to reestablish his or her visitation privileges, right to custody, or other parental rights with the child or children in question." In re Grayson, 419 So.2d 234, 237 (Ala. Civ. App. 1982) (Bradley, J., concurring specially). Unlike a judgment divesting a parent of custody, a judgment terminating parental rights is immediate, permanent, and irrevocable. See C.B. v. State Dep't of Human Res., 782 So.2d 781, 785 (Ala. Civ. App. 1998) ("[T]ermination of parental rights is an extreme action that cannot be undone; it is permanent."). Alabama law does not provide any other remedy that permanently prevents a parent from attempting to regain custody of his or her child. Thus, termination of parental rights represented the sole method by which the juvenile *915 court could secure the best interests of the children.
We cannot accept the mother's argument that the juvenile court could have awarded custody of the children to the maternal aunts and their husbands despite their objections. Alabama law does not grant a juvenile court the power to compel a relative or other person to accept custody of a child in order to prevent a termination of parental rights. In fact, Alabama law provides that placement with a relative may be considered a viable alternative only when the relative is not only fit, but also is willing to assume custody and care of the child. See, e.g., J.B. v. Jefferson Cty. Dep't of Human Res., 869 So.2d 475 (Ala. Civ. App. 2003). In this case, the maternal aunts both expressed an unwillingness to maintain custody of the children absent termination of the mother's parental rights. Thus, the custodial arrangement advocated by the mother was not a feasible alternative the juvenile court could have successfully employed.
In Ex parte T.V., 971 So.2d 1, which the mother cites in her brief to this court, our supreme court held that a juvenile court had erred in terminating parental rights when it could have maintained the status quo by which an acquaintance of the mother exercised custody of the child while the mother progressed toward reunification with the child. In this case, however, that option was not available to the juvenile court because the maternal aunts would not agree to continuing custody without termination of parental rights. Ex parte T.V. does not require a reversal of the judgment in this case.
In its final judgment, the juvenile found, in pertinent part:
"That the parents' attorneys argue that there exists a viable alternative to termination of parental rights, which is continued placement with the maternal aunts. However, after hearing the testimony of the maternal aunts and observing their demeanor, the Court is not persuaded by this argument. [K.B.], who has placement of [D.S.], described how she and her husband had taken all three children in previously and what a difficult period of adjustment that was for their family and their children as well as the [the children]. Then when the children were returned to the parents, it caused heartache and difficulty in their family with their children. [K.B.] testified that their family could not go through that again with [D.S.] and that a condition of her keeping [D.S.] was that the parents' rights would be terminated so they could not get custody of [D.S.] back again later.
"Likewise, maternal aunt, [K.S.], testified that she wanted permanent custody in order to keep [H.S.] and [J.S.] so that the parents could not take the children from her in the future. She testified that her children and she and her husband could not take the loss of the children once they had become part of their family unit.
"Both maternal aunts expressed that they love [the mother], who is the mother of the children. [K.B.] expressed a desire for [D.S.] to know her family history and to know the family she comes from, and stated that she and [K.S.] would allow the children to remain connected.
"The Court finds that if parental rights are not terminated, these maternal aunts likely will not keep these children, which likely will result in the children going to separate foster homes. The Court therefore finds that placement with the maternal aunts is not a viable alternative to a termination of parental rights."
Because the record contains clear and convincing evidence supporting those factual *916 findings and the ultimate determination that awarding custody to the maternal aunts and their husbands was not a viable alternative to termination of parental rights, we affirm the juvenile court's judgment.
AFFIRMED.
Thompson, P.J., and Pittman, Thomas, and Donaldson, JJ., concur.