Rel: March 21, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2024-2025

————————————————

## CL-2024-0763 and CL-2024-0764

————————————————

## J.C.

### v.

## Cullman County Department of Human Resources

————————————————

## CL-2024-0780 and CL-2024-0781

————————————————

## S.C.

### v.

## Cullman County Department of Human Resources

Appeals from Cullman Juvenile Court
(JU-19-593.06 and JU-19-594.06)

CL-2024-0763; CL-2024-0764; CL-2024-0780; and CL-2024-0781

LEWIS, Judge.

In appeal number CL-2024-0763, J.C. ("the father") appeals from a judgment entered by the Cullman Juvenile Court ("the juvenile court") in case number JU-19-593.06 terminating his parental rights to So.C., who was born in October 2013. In appeal number CL-2024-0781, S.C. ("the mother") appeals from that same judgment to the extent that it terminated her parental rights to So.C. In appeal number CL-2024-0764, the father appeals from a judgment entered by the juvenile court in case number JU-19-594.06 terminating his parental rights to Je.C., who was born in May 2012. In appeal number CL-2024-0780, the mother appeals from that same judgment to the extent that it terminated her parental rights to Je.C. We affirm the juvenile court's judgments.

Procedural History

On May 1, 2024, the Cullman County Department of Human Resources ("DHR") filed separate petitions seeking to terminate the parental rights of the father and of the mother (collectively "the parents") to So.C. and Je.C. (collectively "the children"). After a trial, the juvenile court entered judgments on September 16, 2024, terminating the parental rights of the parents to the children. The father filed

2

CL-2024-0763; CL-2024-0764; CL-2024-0780; and CL-2024-0781

postjudgment motions on September 23, 2024. The father filed his notices of appeal with this court on September 30, 2024. The mother filed her notices of appeal on October 3 and 4, 2024.[1] The appeals were held in abeyance until the father's postjudgment motions were denied on October 7, 2024. See Rule 4(a)(2), Ala. R. App. P.

## Evidence

April Ward, a child-abuse-and-neglect investigator for DHR, testified that, in 2019, DHR received a report concerning the parents regarding suspected drug use and improper conditions of their home. She testified that the father tested positive for marijuana and methamphetamine and that the mother tested positive for methamphetamine. According to Ward, the parents' house had no running water, and the children had to go to the home of J.C., their paternal grandmother, to use the bathroom. She testified that the parents were "indicated" for "physical abuse by the risk of serious harm

---

[1]The mother's notices of appeal were timely pursuant to Rule 4(a)(2), Ala. R. App. P. Moreover, because the juvenile court made specific findings of fact on all the issues raised by the mother on appeal, the mother was not required to file a postjudgment motion challenging the sufficiency of the evidence to preserve her argument for review. See R.H. v. Madison Cnty. Dep't of Hum. Res., [Ms. CL-2022-0799, Mar. 24, 2023] ___ So. 3d ___, ___ (Ala. Civ. App. 2023).

for drug use." The children were placed in a safety plan, and Ward opened the cases to ongoing services.

Loree Guthery, another DHR child-abuse-and-neglect investigator, testified that, in January 2023, she received multiple reports concerning the condition of the parents' home. She testified that she investigated the reports and found the children to be unclean and wearing dirty and ill-fitting clothing. According to Guthery, the father was erratic and threatening at their meeting. Guthery testified that the parents both tested positive for extremely high levels of methamphetamines and amphetamines; the father was also positive for cannabinoids. She testified that the parents denied using illegal drugs. According to Guthery, the parents were "indicated" for "neglect, inadequate clothing, personal hygiene, physical abuse, other risk of serious harm." Guthery testified that DHR placed the children with V.M., the children's maternal grandmother[2] ("the maternal grandmother").

---

[2]In her brief, the mother refers to V.M. as the "paternal grandmother." V.M. is referred to as the paternal grandmother in the transcript. However, elsewhere in the record, she is referred to multiple times as the maternal grandmother. Therefore, we will refer to V.M. as "the maternal grandmother."

Meagan Autwell, an ongoing-services worker for DHR, testified that the children began having suicidal and homicidal ideations while in the home of the maternal grandmother. She testified that their behaviors became increasingly worse to the extent that the children were hospitalized on multiple occasions. According to Autwell, the children even suggested that they would harm the maternal grandmother. Autwell testified that the children informed her that the parents had coached them to act out if they were removed from their custody. She testified that security had to be called on the parents at one of the hospitals. Autwell testified that it was recommended that the children be placed in other placements, and she thought another placement would be in the children's best interests. She admitted that there were no safety concerns with the children in the home of the maternal grandmother.

Autwell testified that the children's therapists recommended that the children's contact with the parents be discontinued because that contact was not beneficial to the children's mental health and because of the allegations that the parents had coached the children to act out. Callie Smith, a foster-care supervisor for DHR, testified that the father admitted that he had coached the children to act out and that the father

found it funny. She testified that the children's behavior had improved since their contact with the parents had ceased.

Keegan Neal, another DHR foster-care caseworker, testified that the children had been placed in the custody of DHR in May 2023. She testified that Je.C. was placed with her uncle and aunt and that So.C. was placed in a therapeutic foster home. According to Neal, the children had biweekly visits with one another.

Autwell testified that DHR requested that the parents complete a substance-abuse assessment and that they follow any recommendations resulting therefrom. She testified that she referred the parents to receive in-home services but that the parents did not show up for an appointment. According to Autwell, she also attempted to call the parents for random drug screenings, but they did not complete the screenings. Autwell testified that she received a threatening voicemail from the parents. She testified that she made multiple attempts to contact the parents, and they told her that they did not want to talk to her. She also testified the parents failed to respond to her calls. Autwell testified that there was a severe lack of communication from the parents.

Neal testified that DHR offered the parents substance-abuse assessments, psychological evaluations, parenting classes, and random drug screens. She testified that both parents completed the substance-abuse assessments and psychological evaluations, that the mother completed online parenting classes, and that both parents had completed some but not all of their random drug screens. She testified that she had written letters and made numerous telephone calls to the parents but that the parents rarely called her back. According to Neal, she returned all the parents' telephone calls. Neal testified that the parents had not demonstrated that they could become drug free.

Neal testified that DHR explored all the family resources that the parents provided and that DHR exhausted all less-restrictive alternatives to termination of the parents' parental rights. Specifically, she testified that the children's paternal grandmother has a history with DHR and another relative that the parents mentioned lives on the same property as the parents. Neal testified that the permanency plan for the children is adoption with no identified resource and that the children are adoptable.

7

Dr. Barry Wood testified that he conducted a psychological evaluation on the parents. He testified that both parents reported only marijuana usage despite having tested positive for methamphetamine. He noted that both parents had expended little effort to work on their parenting deficiencies by December 2023. Dr. Wood was not optimistic about the parents' prognosis for rehabilitation.

The father testified that he and the mother live together, that he works for DoorDash, and that he has not paid any child support. He testified that he had not been able to get in touch with DHR workers. According to the father, he does not have a drug problem, and he does not know why he testified positive for drugs. The father testified that he completed a drug assessment and was told that he did not need drug treatment. He denied that he was asked at that assessment if he had a drug problem. The father admitted that he has pending felony charges. He testified that he had not seen the children in over one year. According to the father, he was told that he and the mother could see the children if they passed a drug test. The father testified that he did pass a drug test. However, he admitted that he was told he tested positive for

8

methamphetamine in April 2024 and that he had not passed any drug screenings to which he had submitted on hearing dates.

The father testified that he did not think that DHR made reasonable efforts to reunify his family. He testified that DHR never offered him services for substance abuse. However, he also testified that he does not think he needs rehabilitation for substance abuse.

The parents both tested positive for amphetamines and methamphetamine on a drug test administered the day of the trial. The father also testified positive for marijuana and Gabapentin.

## Standard of Review

"A judgment terminating parental rights must be supported by clear and convincing evidence, which is '"'[e]vidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion.'"' C.O. v. Jefferson Cnty. Dep't of Hum. Res., 206 So. 3d 621, 627 (Ala. Civ. App. 2016) (quoting L.M. v. D.D.F., 840 So. 2d 171, 179 (Ala. Civ. App. 2002), quoting in turn Ala. Code 1975, § 6-11-20(b)(4)).

> "'"[T]he evidence necessary for appellate affirmance of a judgment based on a factual finding in the context of a case in which the ultimate standard for a factual decision by the trial court is clear and convincing evidence is evidence that a fact-finder

9

> reasonably could find to clearly and convincingly … establish the fact sought to be proved."

> "'KGS Steel, Inc. [v. McInish], 47 So. 3d [749,] 761 [(Ala. Civ. App. 2006)].

> "'… [F]or trial courts ruling … in civil cases to which a clear-and-convincing-evidence standard of proof applies, "the judge must view the evidence presented through the prism of the substantive evidentiary burden[,]" [Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)]; thus, the appellate court must also look through a prism to determine whether there was substantial evidence before the trial court to support a factual finding, based upon the trial court's weighing of the evidence, that would "produce in the mind [of the trial court] a firm conviction as to each element of the claim and a high probability as to the correctness of the conclusion."'

> "Ex parte McInish, 47 So. 3d 767, 778 (Ala. 2008). This court does not reweigh the evidence but, rather, determines whether the findings of fact made by the juvenile court are supported by evidence that the juvenile court could have found to be clear and convincing. See Ex parte T.V., 971 So. 2d 1, 9 (Ala. 2007). When those findings rest on ore tenus evidence, this court presumes their correctness. Id."

M.W. v. Marshall Cnty. Dep't of Hum. Res., 399 So. 3d 287, 290-91 (Ala.

Civ. App. 2024).

Discussion

The Father's Appeals

On appeal, the father's sole argument is that DHR failed to use reasonable efforts to rehabilitate him.

"That DHR is generally required to make reasonable efforts to rehabilitate parents of dependent children cannot be questioned. See T.B. v. Cullman Cty. Dep't of Human Res., 6 So. 3d 1195, 1198 (Ala. Civ. App. 2008). That is, DHR must make an effort to tailor services to best address the shortcomings of and the issues facing the parents. See H.H. v. Baldwin Cty. Dep't of Human Res., 989 So. 2d 1094, 1105 (Ala. Civ. App. 2007) (opinion on return to remand) (per Moore, J., with two judges concurring in the result). However, we have clearly stated that the law requires reasonable efforts, not maximal ones. M.A.J. v. S.F., 994 So. 2d 280, 291 (Ala. Civ. App. 2008)."

Montgomery Cnty. Dep't of Hum. Res. v. A.S.N., 206 So. 3d 661, 672 (Ala. Civ. App. 2016). Additionally, "[a]lthough DHR must make reasonable efforts to reunite a parent and child, the parent must make himself or herself available to DHR and must make an effort to address his or her issues and improve his or her circumstances." A.M.F. v. Tuscaloosa Cnty. Dep't of Hum. Res., 75 So. 3d 1206, 1212 (Ala. Civ. App. 2011).

In this case, there was evidence indicating that the father had failed to communicate and cooperate with DHR. In fact, the parents informed Autwell that they did not want to talk to her and left a threatening voice

mail for her. The evidence also indicated that the father was dishonest about his drug usage. Even after testing positive for amphetamines and methamphetamine on a drug test administered the day of the trial, the father continued to deny having a drug problem or a need for drug rehabilitation. DHR provided the father with drug screenings and a substance-abuse assessment. In light of the father's denial that he had a drug problem and his failure to cooperate with DHR, the juvenile court could have properly concluded that further services would be futile. Therefore, we cannot reverse the juvenile court's judgment on this issue.

<u>The Mother's Appeals</u>

The mother's sole argument on appeal is that there was a viable alternative to termination of her parental rights, specifically, placement of the children with the maternal grandmother.

> "We have often stated that, in addition to establishing the dependency of a child and that grounds for the termination of parental rights exist, 'DHR must also present evidence indicating that there are no viable alternatives to the termination of a parent's parental rights.' <u>A.R.H.B. v. Madison Cnty. Dep't of Hum. Res.</u>, 378 So. 3d 543, 549 (Ala. Civ. App. 2022). We have also reiterated that '"DHR must present 'evidence of recent attempts to locate viable alternatives in order to establish that termination of parental rights is the least [drastic] alternative.'"' <u>C.T. v. Calhoun Cnty. Dep't of Hum. Res.</u>, 8 So. 3d 984, 987 (Ala. Civ. App. 2008) (quoting <u>V.M. v. State Dep't of Hum. Res.</u>, 710 So. 2d

915, 921 (Ala. Civ. App. 1998), quoting in turn <u>Bowman v. State Dep't of Hum. Res.</u>, 534 So. 2d 304, 306 (Ala. Civ. App. 1988)) (emphasis omitted). Because DHR was petitioning for the termination of the [parent's] parental rights ..., DHR bore '"'the burden of proving the lack of a viable alternative by clear and convincing evidence.'"' <u>A.R.H.B.</u>, 378 So. 3d at 551 (quoting <u>D.J. v. Etowah Cnty. Dep't of Hum. Res.</u>, 351 So. 3d 1067, 1074 (Ala. Civ. App. 2021), quoting in turn <u>K.R.S. v. DeKalb Cnty. Dep't of Hum. Res.</u>, 236 So. 3d 910, 912 (Ala. Civ. App. 2017))."

<u>G.P. v. Dale Cnty. Dep't of Hum. Res.</u>, [Ms. CL-2023-0676, June 14, 2024] ___ So. 3d ___, ___ (Ala. Civ. App. 2024).

In this case, the evidence indicated that the children were placed with the maternal grandmother as part of a safety plan until their behavior deteriorated to the point that they were hospitalized. The children even threatened to harm the maternal grandmother. At the commencement of the trial, DHR's attorney stated that the maternal grandmother had filed a petition for custody but that he had spoken to her and, "based on her circumstances with her grandson, [she] no longer wishes to proceed with her petition." The maternal grandmother was present and did not dispute that statement. Based on the foregoing, the juvenile court could have concluded that placing the children with the maternal grandmother was not a viable alternative to termination of the mother's parental rights.

13

Conclusion

Because we have rejected the sole arguments raised by the parents in their respective appeals, we hereby affirm the judgments of the juvenile court.

CL-2024-0763 -- AFFIRMED.

CL-2024-0764 -- AFFIRMED.

CL-2024-0780 -- AFFIRMED.

CL-2024-0781 -- AFFIRMED.

Edwards, Hanson, and Fridy, JJ., concur.

Moore, P.J., concurs in the result, without opinion.