Rel  December 5, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2025-2026

————————————————

## CL-2025-0468

————————————————

## M.E.M., Jr.

## v.

## K.J.

## Appeal from Jefferson Juvenile Court
## (JU-15-1609.02)

EDWARDS, Judge.

M.E.M., Jr. ("the alleged father"), appeals from a judgment entered by the Jefferson Juvenile Court ("the juvenile court") terminating his parental rights to M.M. ("the child") and awarding permanent custody of

the child to K.E. ("the maternal aunt").  For the reasons discussed below, we dismiss the appeal with instructions to the juvenile court.

Procedural History

On April 29, 2024, the maternal aunt filed a petition in the juvenile court seeking to terminate the parental rights of S.N.J. ("the mother") to the child.  According to the maternal grandmother's petition, on October 26, 2015, the juvenile court had adjudicated the child dependent and had awarded her custody of the child.[1]  Also, in her petition, the maternal aunt asserted that "[t]here ha[d] never been a [f]ather adjudicated to the … child, nor has there been a presumed father that has been active in the life of the child."  A hearing on the maternal aunt's petition was scheduled to occur on July 23, 2024.

On July 8, 2024, the maternal aunt amended her petition to allege that the alleged father "was listed on the … child's birth certificate." Moreover, the maternal aunt asserted that, "should [the juvenile court] determine that the [alleged] father ha[d] any parental rights under the

_____

[1]The October 26, 2015, judgment is not contained in the record on appeal.

2

laws of this state[,] … the [alleged] father ha[d] effectively abandoned the minor child."

On July 22, 2024, the alleged father filed an answer to the maternal aunt's termination-of-parental-rights petition, as amended. In his answer, the alleged father admitted that he was the child's father but denied that he had abandoned the child. He asserted that the mother had prohibited him from maintaining a relationship with the child.

Following a hearing, the juvenile court, on July 24, 2024, entered an order that noted that the alleged father had attended the hearing via Zoom, a videoconferencing service. That order also directed the Alabama Department of Human Resources ("DHR") to conduct an evaluation of the maternal aunt's residence in Pinson and scheduled a "pretrial" hearing to occur on August 20, 2024.

On August 20, 2024, the alleged father's counsel filed a motion requesting that the juvenile court allow the alleged father, who is a resident of California, to appear virtually for the pretrial hearing. While there is no order in the record on appeal granting the alleged father's request, an order entered by the juvenile court on August 20, 2024, indicates that, on that day, the alleged father had appeared virtually for

the pretrial hearing. The order further stated that DHR had provided a favorable oral report regarding the maternal aunt's home evaluation, and the juvenile court awarded the alleged father visitation with the child to be exercised via "telephone, zoom or other electronic means." The juvenile court also scheduled a second "pretrial" hearing to occur on October 22, 2024.

Following the October 22, 2024, pretrial hearing, the juvenile court, on October 23, 2024, entered an order that, in pertinent part, noted that the alleged father had again appeared virtually for the hearing. The order also scheduled a trial on the maternal aunt's termination-of-parental-rights petition, as amended, to occur on February 25, 2025; the trial setting was subsequently continued to May 27, 2025.

Following the trial, the juvenile court, on June 2, 2025, entered a judgment terminating the mother's and the alleged father's parental rights to the child and awarding the permanent legal custody of the child to the maternal aunt. See Ala. Code 1975, § 12-15-102(16). The judgment also noted that the alleged father had not been present for the trial but that his counsel had appeared on his behalf.

4

On June 16, 2025, the alleged father filed a postjudgment motion seeking to vacate that part of the judgment that terminated his parental rights. In his motion, the alleged father argued that, because he had been allowed to virtually appear at the pretrial hearings, he had been operating under the assumption that he did not need to personally appear for the termination trial. The alleged father posited that the juvenile court had violated his due-process rights by conducting the termination trial despite his failure to appear. The alleged father requested that the juvenile court vacate its June 2, 2025, judgment insofar as it terminated his parental rights and reinstate the matter to the trial docket.

Also, on June 16, 2025, the alleged father filed a timely notice of appeal to this court. The alleged father's appeal was held in abeyance pending the disposition of his postjudgment motion. See Rule 4(a)(5), Ala. R. App. P. On June 30, 2025, the alleged father's postjudgment motion was denied by operation of law, see Rule 1(B), Ala. R. Juv. P.; Rule 59.1, Ala. R. Civ. P., and the alleged father's notice of appeal became effective on that date. See Rule 4(a)(5); and K.R.S. v. DeKalb Cnty. Dep't of Hum. Res., 236 So. 3d 910, 912 (Ala. Civ. App. 2017).

The Evidence

Before taking testimony, the juvenile court addressed a motion that had been filed by the alleged father's attorney seeking either to continue the trial or to allow the alleged father to appear virtually.[2] After hearing arguments from counsel regarding the motion, the juvenile court denied that request.

The maternal aunt testified that she had received custody of the child in October 2015. Since that time, she said, the alleged father had spoken to the child, via cellular telephone, in December 2015 and on the child's birthday in 2022. She also testified that the alleged father had sent the child $100 in November 2022. According to the maternal aunt, the alleged father was aware of her contact information because, she said, she had maintained the same cellular-telephone number since before the 2015 dependency action was commenced. According to the maternal aunt, neither she nor the child had heard from the alleged father from November 2022 until she filed her termination-of-parental-rights

---

[2]The alleged father's motion to continue or, alternatively, to appear virtually at the trial is not included in the record on appeal.

petition in April 2024. She denied that she had ever kept the child from the alleged father.

After the alleged father was served with the termination-of-parental-rights petition, he reestablished contact with the maternal aunt and with the child. According to the maternal aunt, during the pendency of the matter, the alleged father, by agreement of the parties, would call her cellular telephone to speak with the child on either Sunday or Monday of each week. She testified, however, that the telephone contact between the alleged father and the child had been problematic. The first time the alleged father contacted the child, the child did not recognize the alleged father's voice, and he was unable to identify who the alleged father was, so he hung up on the alleged father. The alleged father called back and raised his voice at the child, which, the maternal aunt said, had prompted the child to again end the call with the alleged father.

Subsequent attempts at telephonic communication between the child and the alleged father did not fare better. On two additional occasions the alleged father contacted the child by telephone, and, on both of those occasions, the child had indicated that he did not want to speak with the alleged father and had ended the call. At the time of the

termination-of-parental-rights trial, the alleged father had last spoken to the child in October 2024. The maternal aunt said that she had encouraged the child to speak with the alleged father but that her efforts had failed. She testified that the child had received counseling and that that the child's unwillingness to speak with the alleged father had been addressed during the counseling sessions.

The maternal aunt has four children, including the child, that reside in her home. According to her, all four children enjoy a close relationship, and the children all consider each other siblings. The maternal aunt testified that it was her intention to adopt the child if the juvenile court granted her petition to terminate the mother's and the alleged father's parental rights.

A.F., the maternal aunt's sister, testified that she had adopted a half sibling of the child in March 2024. According to A.F., she regularly interacted with the maternal aunt and the child, and she opined that the child was very well adjusted to the maternal aunt's home. She testified that she was aware of the identity of the alleged father but said that she had never spoken to him or met him in person.

Discussion

The alleged father raises several issues on appeal. He argues that the juvenile court lacked subject-matter jurisdiction to terminate his parental rights because, he says, the record does not contain evidence establishing that he is the legal father of the child; that the juvenile court violated his due-process rights when it denied his oral motion to continue or, alternatively, to allow him to appear virtually for the trial; that the judgment terminating his parental rights is not supported by clear and convincing evidence; and that the juvenile court erred when it determined that there were no viable alternatives to the termination of his parental rights. Because we find the alleged father's first argument dispositive of this appeal, we pretermit discussion of the other issues he raises.

In <u>J.R.C. v. Mobile County Department of Human Resources</u>, 342 So. 3d 580 (Ala. Civ. App. 2021), this court stated:

> "The termination of parental rights is governed by the Alabama Juvenile Justice Act ('the AJJA'), § 12-15-101 et seq., Ala. Code 1975. The statute authorizing a juvenile court to terminate parental rights provides that, if the juvenile court determines that 'the <u>parents</u> of a child are unable or unwilling to discharge their responsibilities to and for the child, or that the conduct or condition of the <u>parents</u> renders them unable to properly care for the child ..., it may terminate

9

the parental rights of the <u>parents</u>.' § 12-15-319(a), Ala. Code 1975 (emphasis added). The AJJA defines 'parent' as '[t]he <u>legal mother</u> or the <u>legal father</u> of a child under the jurisdiction of the juvenile court' pursuant to the AJJA. § 12-15-102(19), Ala. Code 1975 (emphasis added). The AJJA does not further define the term 'legal father,' but that term has a commonly understood legal meaning:

> "'The man recognized by the law as the male parent of a child. A man is the legal father of a child if he was married to the child's natural mother when the child was born, if he has recognized or acknowledged the child, or if he has been declared the child's natural father in a paternity action. ...'

"<u>Black's Law Dictionary</u> 640 (8th ed. 2004). Consistent with that definition, Alabama law recognizes a man as a legal father of a child when he is the 'presumed father' of the child, <u>see</u> § 26-17-204, Ala. Code 1975, or has been adjudicated as the father of the child, <u>see</u> § 26-17-201(b), Ala. Code 1975. Under [DHR's] regulations, an 'alleged father' does not meet the criteria to be considered a 'legal father' and, therefore, is not a 'parent' whose parental rights are subject to termination by a juvenile court under the AJJA."

342 So. 3d at 582 (footnote omitted). In pertinent part, § 26-17-204(a),

Ala. Code 1975, provides:

"A man is presumed to be the father of a child if:

> "....
> "(5) while the child is under the age of majority, he receives the child into his home and openly holds out the child as his natural child or otherwise openly holds out the child as his natural child and establishes a significant parental

10

> relationship with the child by providing emotional and financial support for the child."

In its judgment, the juvenile court found, in pertinent part:

"The [alleged f]ather has not maintained contact with the child. The [alleged f]ather was aware of the dependency case involving this child in 2015 and that the [maternal aunt] was given custody of the child. The [alleged f]ather had no in-person contact with the child from December 2015 to July 2022. The [alleged f]ather had no contact of any kind with the child between November 2022 and April 2024. Subsequent to this case being filed, the [alleged f]ather has spoken on the phone with the child, but caused emotional distress to the child, requiring that the child submit to counseling to address his emotional concerns. [The alleged f]ather has failed to provide any monetary support to the [maternal aunt] for the benefit of the child, and has failed to maintain anything resembling a relationship with the child. The [alleged f]ather's conduct constitutes an abandonment of the child and shows that he is unwilling to or unable to discharge his responsibilities to and for the child."

On appeal, the alleged father does not contest the juvenile court's findings of fact.

The alleged father's admission of paternity contained in his unverified July 22, 2024, answer is not sufficient factual support for an adjudication of the alleged father's paternity. Section 26-17-623, Ala. Code 1975, authorizes a court adjudicating parentage to accept a verified admission of paternity. Specifically, § 26-17-623(a) provides:

11

"A defendant in a proceeding to adjudicate parentage may admit to the paternity of a child by filing a verified pleading to that effect or by admitting paternity under penalty of perjury when making an appearance or during a hearing."

The alleged father did not admit paternity in a verified pleading or testify to his paternity during a hearing; thus, the alleged father did not meet the statutory requirements for his admission of paternity to be effective. The evidence in the record on appeal does not establish that the paternity of the child was determined in the October 26, 2015, dependency judgment that awarded custody of the child to the maternal aunt. See § 26-17-201(b), Ala. Code 1975. Moreover, considering the juvenile court's uncontested findings regarding the alleged father and the statutory requirements of § 26-17-204(a), we cannot conclude that the maternal aunt has established that the alleged father is the child's presumed father. Based on the foregoing, we are compelled to determine that the maternal aunt has failed to establish that the alleged father is the child's legal father.[3] See, J.R.C., supra.

---

[3]In his brief to this court, the child's guardian ad litem argues that the juvenile court had subject-matter jurisdiction to terminate the alleged father's parental rights because, he says, North Carolina has recognized that paternity can be judicially established by the child's birth certificate and because the alleged father was listed as the child's biological father on his North Carolina birth certificate. We disagree.

Because the evidence does not indicate that the alleged father is the legal father of the child and because the juvenile court had no evidence before it to support an implicit adjudication of paternity in the alleged father, the juvenile court lacked subject-matter jurisdiction to terminate the alleged father's parental rights to the child; therefore, that portion of the judgment terminating the parental rights of the alleged father is void. See J.R.C., 342 So. 2d at 583. Consequently, because a void judgment will not support an appeal, id., we dismiss the alleged father's appeal, albeit with instructions to the juvenile court to vacate that part of the judgment purporting to terminate the alleged father's parental rights to the child.

APPEAL DISMISSED WITH INSTRUCTIONS.

Moore, P.J., and Hanson, Fridy, and Bowden, JJ., concur.

---

Although the child was born in North Carolina, her paternity is determined under Alabama law. See § 26-17-103(b)(1), Ala. Code 1975.